**Victor J. MONTILLA**

v.

**The UNITED STATES.**

No. 368–68.

United States Court of Claims.

April 14, 1972.

Philip F. Herrick, Washington, D. C., attorney of record for plaintiff.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, LARAMORE and DURFEE, Senior Judges, and DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

SKELTON, Judge: ·

We are indebted to Trial Commissioner Mastin G. White in this case for his findings of fact and conclusion of law and also for his opinion, although we reach a different result. We have adopted his findings of fact with minor changes, and

have used much of his opinion. The opinion of the court follows:

The question to be decided by the court in this case is whether the plaintiff, who has been a commissioned officer in the Army Reserve since March 1934 and who has been 60 years of age since March 1966, is entitled to receive retired pay from the Army in accordance with the provisions of 10 U.S.C. §§ 1331 and 1332. The plaintiff's application for retired pay was rejected by the Department of the Army on the ground that he did not have the minimum 20 years of qualifying service essential to establish his eligibility for retired pay benefits.

The plaintiff is a native and a resident of Puerto Rico. He is a licensed physician and has practiced medicine in Puerto Rico since the early 1930's, except for periods of active military duty performed by the plaintiff pursuant to his commission in the Army Reserve.

The plaintiff was originally commissioned as a first lieutenant in the Medical Corps Reserve of the Army on March 8, 1934, and he accepted this appointment by executing the oath of office on March 26, 1934. Subsequently, he was promoted to the grade of captain in the Medical Corps Reserve on December 9, 1939.

The plaintiff regularly participated in Army Reserve activities prior to World War II. He performed 2-week tours of active military duty for training purposes in 1935, 1936, 1938, and 1939. During the emergency period which preceded this country's entry into World War II, the plaintiff performed a 1-year tour of active military duty from October 14, 1940, to October 13, 1941.

After the United States became a participant in World War II, the plaintiff was on extended active duty with the Army from May 30, 1942, to September 6, 1945. He was promoted to the grade of major during the war.

On being released from active military duty at the end of World War II, the plaintiff was tendered—and he accepted

—a commission as major in the Medical Corps Reserve of the Army. Some 15 months later, the plaintiff was promoted to the grade of lieutenant colonel in the Medical Corps Reserve.

Soon after being released from active military duty on September 6, 1945, at the end of World War II, the plaintiff opened an office for the practice of medicine in San Juan, Puerto Rico. He had not previously practiced in San Juan; and for a number of years after opening an office there, the plaintiff was extremely busy in his efforts to build up a medical practice. Because of this, the plaintiff did not participate in Army Reserve activities after World War II. However, he was still interested in the Army and he wished to continue as a member of the Active Reserve. It was the plaintiff's belief that his status as a member of the Active Reserve was dependent only upon his being physically fit to perform military duty and upon his willingness to perform such duty in the event of a call to active service, and he met both of these requirements. As a matter of fact, the plaintiff officially continued to be a member of the Active Reserve until August 1949.

On August 29, 1949, the Headquarters of the U. S. Army Forces Antilles, by means of paragraph 3 of Special Orders No. 170, transferred the plaintiff from the Active Reserve to the Inactive Reserve. In accordance with the presumption of official regularity, it can reasonably be inferred that the issuing headquarters mailed an extract copy of paragraph 3 to the plaintiff at the last address which the plaintiff had furnished to the Army. However, the plaintiff did not receive the extract copy of paragraph 3 or any other notice regarding the transfer from the Active Reserve to the Inactive Reserve in August 1949.

The plaintiff had moved his residence to No. 1111 Magdalena Avenue in Santurce, a suburb of San Juan, in September 1948. Although he notified the post office on the regular form regarding this change of address, he did not notify the Army until August 1951, or for a period of approximately 3 years after the change occurred. In this connection, the plaintiff was aware that he should notify the Army with reasonable promptness regarding any permanent change of address. Therefore, it must be concluded that the plaintiff's ignorance for several years after August 1949 concerning the transfer from the Active Reserve to the Inactive Reserve was due principally to his own negligence.

The plaintiff's membership in the Active Reserve of the Army from March 26, 1934 (the date on which the plaintiff accepted his initial appointment as a Reserve officer) through June 30, 1949, constituted qualifying service toward establishing the plaintiff's eligibility for retired pay under 10 U.S.C. § 1331 and 1332. Thus, at the close of June 30, 1949, the plaintiff had to his credit 15 years, 3 months, and 5 days of qualifying service. Beginning with July 1, 1949, the governing statutory provisions required that a reservist earn "at least 50 points" per year through specified activities in order for any annual period to be regarded as qualifying service toward establishing eligibility for retired pay benefits.

The plaintiff was unaware of the requirement which became effective on July 1, 1949, as indicated in the last sentence of the preceding paragraph.[1] The plaintiff continued to believe that he was still a member of the Active Reserve and that such status, if maintained for a total of 20 years, would qualify him for retired pay benefits from the Army after he reached the age of 60 years. After the plaintiff notified the Army of his correct address in August 1951, the Headquarters of the U. S. Army Forces Antilles wrote to the plaintiff on August 11, 1951, and directed that he report promptly to the Medical Examining Board, Induction Station, Fort Buchanan, Puerto Rico, for a physical examination in connection with

---

1. The plaintiff heard of the point system for reservists in about 1951, but he understood that it related only to eligibility for promotion.

an ORC Service Evaluation Program that was being conducted to determine the qualifications and availability of Reserve officers for active military duty. The plaintiff reported to the place mentioned and was given a physical examination.

Subsequently, by means of a communication dated October 28, 1952, the Army informed the plaintiff that he was eligible for an indefinite-term Reserve appointment, in lieu of his then-current 5-year appointment, and asked that he execute and return certain enclosed papers, including an oath of office, if he agreed to accept the indefinite-term appointment. The plaintiff agreed to accept the indefinite-term appointment, and he executed and returned the oath of office.

On March 25, 1954, the following letter was sent to the plaintiff by the Headquarters of the U. S. Army Forces Antilles and Military District of Puerto Rico:

HEADQUARTERS
UNITED STATES ARMY FORCES ANTILLES
AND MILITARY DISTRICT OF PUERTO RICO
Fort Brooke, Puerto Rico

ANTAG 201   Montilla, Victor J.   26 March 1954
03158 25
SUBJECT:   Uniformed Services Contingency Option Act of 1954
(P.L. 239, 83d Congress, DA Bulletin 13, 1953)
TO:   Lt. Col. Victor J. Montilla, MC–USAR
1111 Magdalena Avenue
Santurce, Puerto Rico

1. The Uniformed Services Contingency Option Act permits Reservists to elect, prior to completion of 18 years service *which is creditable in the computation of basic pay*, to receive a reduced amount of retirement pay to provide an annuity payable after death, to their widow, child or children if such widow, child or children are living on the date of his retirement.

2. Reservists who, on 1 November 1953, have completed over 18 years service, and any who will complete 18 years before 30 April 1954, *which is creditable in the computation of basic pay*, have until 30 April 1954, to elect an annuity. If this election is not made by this date, reservists in this category waive all rights to make a future election.

3. Members may elect one or more of the four (4) options payable in such amounts expressed as a percentage of the reduced amount of retired pay as specified at time of election, in amounts equal to one half, one fourth or one eight [sic] of the reduced amount of retired pay.

4. Attached herewith is Fact Sheet (FS–7), which explains this annuity plan in detail. An estimate of the probable cost to you depends on which option is desired, your age and your wife's age at time of retirement. This probable cost may be computed by referring to actuarial tables available in your local USAR Center or the Civilian Components Division of the Adjutant General's Office, this headquarters.

5. Records at this station indicate that you completed 20 years service, *which is creditable in the computation of basic pay*, on 7 Mar 1954. Therefore, you are required to either make an option or decline to do so by completing in triplicate DA Form 1041, which is inclosed.

6. It is requested that subject form be *completed, signed, attested* and returned in duplicate to this headquarters not later than 30 April 1954, in the enclosed self-addressed envelope which requires no postage. If you check the block "I do not desire to receive reduced retired pay in order to provide an annuity for my dependents", it is not necessary to secure the signature of an attesting officer. [Emphasis supplied.]

BY COMMAND OF BRIGADIER GENERAL SWEANY:

3 Incls.   Rex. L. Moyer /s/
1. Fact Sheet (FS–7)   REX L. MOYER
2. DA Form 1041 (trip)   CWO, USA
3. Self-addressed envelope   Asst AG

In response to this communication, the plaintiff informed the Army that he did not desire to receive reduced retirement pay in order to provide an annuity for his dependents.

On or about November 2, 1955, the Headquarters of the U. S. Army Forces Antilles sent to the plaintiff an extract

copy of paragraph 36 of Special Orders No. 212, indicating that the plaintiff was assigned to the 7573d USAR Control Group, a unit of the Inactive Reserve. Upon receiving this information, the plaintiff went to the local office of the Organized Reserve and talked to Colonel Charner W. Powell, the Senior Army Advisor assigned to that office. The plaintiff testified that he told Colonel Powell that he wanted to stay in the Active Reserve and did not want to be transferred to the Inactive Reserve if the transfer would adversely affect his entitlement to retired pay benefits upon reaching the age of 60. The plaintiff further testified that Colonel Powell, after examining a file of papers relating to the plaintiff's military career, stated to the plaintiff that there was nothing for him to worry about; that he had served in the Active Reserve for 20 years; and that he would commence drawing his retired pay upon reaching the age of 60. However, Colonel Powell's statement, which was introduced by the plaintiff before the Army Board for Correction of Military Records, and which was in evidence before our trial commissioner, was, in pertinent part as follows:

* * * Due to passage of time, I have only a vague recollection of his [plaintiff's] visit and I have no recollection as to advice given him. However, Col. Montilla is a man of high moral character who, I believe, acted in good faith as to his understanding of his obligations at that time.

On this phase of the case, the Board concluded:

6. That although the applicant states he was informed by his senior reserve advisor that he had completed 20 years satisfactory service, the statement he submits tending to corroborate this contention is vague and uncertain; and further the premises upon which the informal advice was given are not known.

On February 9, 1966, the plaintiff—believing that he would be entitled to commence receiving retired pay from the Army after reaching his 60th birthday on March 2, 1966—submitted to the appropriate Army office an application for retired pay benefits beginning April 1, 1966. This application was denied on the ground that the plaintiff was not eligible for retired pay benefits, since he had "completed less than the minimum service requirement prescribed by law."

The plaintiff next applied to the Army Board for Correction of Military Records and asked that his military record be corrected to show that he had the minimum 20 years of qualifying service necessary to establish his entitlement to retired pay benefits. After holding a hearing on August 23, 1967, the Board made findings and conclusions, and recommended that the application be denied. The Under Secretary of the Army approved the findings, conclusions, and recommendation of the Board, and denied the plaintiff's application on November 2, 1967.

The present suit was instituted by the plaintiff on December 6, 1968.

At the pretrial conference on October 14, 1969, plaintiff's counsel stated that the plaintiff desired an opportunity to present oral testimony at a trial, but defendant's counsel objected to the holding of a trial and the reception of any evidence by the court in this case. Defendant's counsel contended that the court's function was merely to review the decision of the Army Board for Correction of Military Records on the basis of the administrative record and determine whether such decision was entitled to finality or was vitiated by a lack of substantial evidence in support of the decision, arbitrariness, etc. The defendant's objection to the holding of a trial was overruled by the commissioner, and a trial was subsequently held in December 1969. The plaintiff was the only witness who testified at this trial. All other evidence consisted of documents and testimony which had been put into evidence before the Board.

The holding of a trial at the request of the plaintiff was required, since the plaintiff was entitled, as a matter of right, to have a judicial determination of the

disputed factual issues involved in his claim. Here, in contrast to many contract cases, the plaintiff had not contracted away such right. *Cf.* United States v. Carlo Bianchi & Co., 373 U.S. 709, 713, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 429, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966).

On January 22, 1971, the plaintiff filed a motion to stay proceedings in this case pending the filing of a new application for reconsideration with the Army Board for Correction of Military Records. This motion has been considered by the court along with the merits of the case after oral argument on the whole case by the parties.

It is undisputed that when the plaintiff was transferred to the Inactive Reserve by the Army on August 29, 1949, he had to his credit 15 years, 3 months, and 5 days of qualifying service toward establishing his eligibility for retired pay under 10 U.S.C. §§ 1331–32 (1964). It is equally clear that these statutes require 20 years of qualifying service computed under the provisions of 10 U.S.C. § 1332 in order to receive retirement pay at age 60, and that service (other than active service) in an inactive section of the organized Reserve Corps or of the Army Reserve may not be counted in computing the required 20 years of such qualifying service. These statutes provide as follows:

10 U.S.C. § 1331 (1964), provides, in pertinent part as follows:

§ 1331. Age and service requirements.

(a) * * * [A] person is entitled, upon application, to retired pay computed under section 1401 of this title, if—

(1) he is at least 60 years of age;

(2) he has performed at least 20 years of service computed under section 1332 of this title;

*    *    *    *    *    *

10 U.S.C. § 1332 (1964), provides, in pertinent part as follows:

§ 1332. Computation of years of service in determining entitlement to retired pay.

(a) * * * [F]or the purpose of determining whether a person is entitled to retired pay under section 1331 of this title, his years of service are computed by adding—

(1) his years of service, before July 1, 1949, in—

(A) the armed forces;

*    *    *    *    *    *

(2) each one-year period, after July 1, 1949, in which he has been credited with at least 50 points on the following basis—

(A) one point for each day of—

(i) active service; or

(ii) full-time service under sections 316, 502, 503, 504, and 505 of title 32 while performing annual training duty or while attending a prescribed course of instruction at a school designated as a service school by law or by the Secretary concerned;

if that service conformed to required standards and qualifications;

(B) one point for each attendance at a drill or period of equivalent instruction that was prescribed for that year by the Secretary concerned and conformed to the requirements prescribed by law, including attendance under section 502 of title 32; and

(C) points at the rate of 15 a year for membership in a reserve component of an armed force, in the Army or the Air Force without component, or in any other category covered by subsection (a) (1) except a regular component.

*    *    *    *    *    *

(b) The following service may not be counted under subsection (a):

(1) Service (other than active service) in an inactive section of the Organized Reserve Corps or of the Army Reserve, or in an inactive section of the officers' section of the Air Force Reserve.

\* \* \* \* \* \*

Accordingly, plaintiff did not have to his credit the necessary 20 years of qualifying service required by these statutes when he applied for retirement pay on February 9, 1966, nor on his 60th birthday on March 2, 1966. He seeks to avoid this deficiency by contending that he was misled by officers of the U. S. Army into thinking that he had already completed the necessary 20 years of qualifying service at a time when he could have served the additional years required for retired pay, and that he would have done so had it not been for misinformation they gave him. He says the government should be estopped from denying him retirement pay under these circumstances.

The plaintiff bases his estoppel theory of recovery mainly upon two events which he says misled him into a false sense of security and belief that he was qualified for retirement pay. These events are, first, the above-quoted letter he received from the Army dated March 25, 1954, with respect to retirement pay and an annuity for his dependents upon his reaching the age of 60, and, secondly, his conversation with Colonel Charner W. Powell on or about November 2, 1955, about his service in the Active Reserve and his retired pay at age 60. We will consider these events in the order named.

■■ The letter could not form the basis of an estoppel against the government because the statements contained therein were correct. Concisely stated, the letter advised the plaintiff that he had completed 20 years service "which is creditable in the computation of *basic pay.*" [Emphasis supplied.] This was true, because both *active* service and *inactive* service in the Army Reserve are counted in computing *basic pay.* The plaintiff had enough of both kinds of service to make 20 years toward the computation of *basic pay.* On the other hand, inactive service in the Reserve is not counted in computing the years necessary for *retired pay.* The letter nowhere advised the plaintiff that he had completed 20 years of service that were creditable in the computation of *retired pay.* Service that was creditable in the computation of basic pay was mentioned three times in the letter. Not once was service that is creditable in the computation of retired pay mentioned. There was no misinformation in the letter. If plaintiff was misled by the letter, it was because he misunderstood it through his own negligent reading of it. Furthermore, even if the letter had misrepresented the facts, it could not estop the government in this case, because the officer who wrote the letter did not have the power nor the authority to waive or make null and void the provisions of laws enacted by the Congress of the United States, as shown in the decided cases below.

We now proceed to the conversation plaintiff had with Colonel Powell. The plaintiff says that Colonel Powell examined his file and told him he had 20 years of active service in the Reserve; that he had nothing to worry about; and that he would commence drawing his retired pay at age 60. Colonel Powell vaguely remembered the visit, but did not remember the advice he gave the plaintiff. Assuming the plaintiff's version of the conversation to be correct, it is conceivable he could have been misled. The defendant disputes this, saying the plaintiff was an educated man who held the rank of Lieutenant Colonel in the Army and had served in the Army and Active Reserve for over 15 years. Under these circumstances, argues defendant, it is not logical to conclude that the plaintiff did not know the service requirements for retired pay. But even if plaintiff is correct in saying he did not know the service requirements for retired pay and that he was misled into thinking he had completed the requirements by Colonel Powell's statements, he is still confronted with many legal difficulties which he must overcome in order to prevail in this case on the ground of estoppel.

The above statutes unequivocally require 20 years active service in order to qualify for retirement pay at age 60. Many cases decided by the courts uphold this requirement. *See* Price v. United

States, 100 F.Supp. 310, 121 Ct.Cl. 664, (1951), 104 F.Supp. 99, 121 Ct.Cl. 681 (1952), cert. denied, 344 U.S. 911, 73 S.Ct. 333, 97 L.Ed. 703 (1953); Williams v. United States, 117 F.Supp. 189, 127 Ct.Cl. 167 (1953); Forester v. United States, 291 F.2d 397, 154 Ct.Cl. 270 (1961); Warthen v. United States, 157 Ct.Cl. 798 (1962); and Merrill v. United States, 338 F.2d 372, 168 Ct.Cl. 1 (1964).

The plaintiff relies heavily upon Sullivan v. United States, 177 Ct.Cl. 518 (1966) to support his claim. In that case the plaintiff had finished his service requirements and was eligible for retired pay at age 60. However, he was faced with a court-martial and was mistakenly told that if he would resign he could avoid the court-martial and could possibly get his retirement also. He resigned and then applied for his retirement, which was turned down because of his resignation. He was allowed to retract his resignation and was then given his retirement. This case is not apposite here for at least two reasons. In that case, he was eligible for retired pay, whereas in our case, he is not. Also, that case was not disposed of on the basis of estoppel, which is the only question in the case before us.

We think the decision of the Supreme Court in Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), controls and is dispositive of the case at bar. In that case, the petitioner was a wholly-owned government corporation created by the Federal Crop Insurance Act, 52 Stat. 72, 7 U.S.C. § 1503 (1964), as amended. The corporation was authorized to insure crops planted for harvest in 1945 against loss due to various causes, including drought. Various wheat crop insurance regulations were issued by the corporation under the statute. The respondent applied for insurance to cover 460 acres of spring wheat, 400 acres of which were reseeded on winter wheat acreage. The corporation accepted the application and the premium and issued the insurance. The crop was destroyed by drought in 1945. When the corporation discovered that the wheat had been reseeded on winter wheat acreage, it refused to pay the loss because it was prohibited by the wheat crop insurance regulations. The owner of the crop sued on his insurance policy in a state court and judgment was rendered for him on the theory that he did not know of the regulations and he had been misled by the agent of the corporation into believing that reseeded wheat was insurable by the corporation. The Supreme Court of Idaho affirmed the judgment. The United States Supreme Court reversed the judgment saying:

\* \* \* Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. [Cases omitted.]

If the Federal Crop Insurance Act had by explicit language prohibited the insurance of spring wheat which is reseeded on winter wheat acreage, the ignorance of such a restriction, either by the respondents or the Corporation's agent, would be immaterial and recovery could not be had against the Corporation for loss of such reseeded wheat. \* \* \* Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. \* \* \*

Accordingly, the Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance. The oft-quoted observation in Rock Island,

Arkansas & Louisiana Railroad Co. v. United States, 254 U.S. 141, 143, [41 S.Ct. 55, 56, 65 L.Ed. 188] that "Men must turn square corners when they deal with the Government," does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury. The "terms and conditions" defined by the Corporation, under authority of Congress, for creating liability on the part of the Government [here the provisions of 10 U.S.C. §§ 1331–32] preclude recovery for the loss of the reseeded wheat no matter with what good reason the respondents thought they had obtained insurance from the Government. * * * [*Id.* at 384–385, 68 S.Ct. at 3]

As can be seen from the decision in the above case, the regulations were given the force and effect of law and the insured was charged with knowledge of them even though he had no actual knowledge of their contents. The effect of the decision in that case was that the agent of the government did not have the authority nor the power to nullify the regulations by his actions and statements that misled the insured. The case is even stronger for the government in our case. Here we do not have regulations but statutes passed by Congress. The plaintiff is charged with knowledge of their provisions. It matters not what Colonel Powell told the plaintiff nor what was in the letter that plaintiff received from the Army. Colonel Powell nor the writer of the letter did not have the power nor the authority to waive or nullify the provisions of the statutes enacted by the Congress. One can well imagine the chaos that would result if the thousands of colonels and other officers in the Army could by their actions and conduct make null and void the provisions of laws duly passed to govern those in the military service. In short, we conclude that neither Colonel Powell nor the author of the letter had the authority or the power to waive or make inapplicable the provisions of the statutes in this case regarding the retired pay of the plaintiff. Accordingly, there can be no estoppel against the government because of their actions and conduct.

Many cases have cited and followed the Federal Crop Ins. Corp. v. Merrill case. *See* Western Penn. Horological Inst., Inc. v. United States, 146 Ct.Cl. 540, 546 (1959); United States v. Ulvedal, 372 F.2d 31 (8th Cir. 1967); United States v. Rossi, 342 F.2d 505 (9th Cir. 1965); Michals v. Federal Savings & Loan Ins. Corp., 413 F.2d 144 (7th Cir. 1969); Gray v. Johnson, 395 F.2d 533 (10th Cir. 1968), cert. denied, 392 U.S. 906, 88 S.Ct. 2056, 20 L.Ed.2d 1364; ANA Small Business Inv. Co. v. Small Business Admin., 391 F.2d 739 (9th Cir. 1968); and Allison v. United States, 426 F.2d 1324 (6th Cir. 1970).

The plaintiff cites Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951) in support of his position. That case is not apposite on the question of estoppel. In that case the Supreme Court stated specifically that its decision was not based on estoppel. We do not think it necessary to discuss the facts in that case.

The case of United States v. Georgia-Pacific Co., 421 F.2d 92 (9th Cir. 1970), is cited by plaintiff to show the government can be bound by estoppel. We do not think that case is in point because it does not involve the waiving or nullifying of a statute by the acts of an agent of the government. Rather, it involved a contract situation.

Other cases cited by plaintiff do not involve the nullification of a statute by the acts and conduct of an officer of the government, which is the claim of the plaintiff in the case before us. Such cases cannot control our case.

█ It is true that the government may be estopped by the acts and conduct of its agents where they are duly authorized and are acting within the scope of their authority and in accordance with the power vested in them, as, for instance, in certain cases involving contractual dealings with the government. But we

know of no case where an officer or agent of the government, such as Colonel Powell of the Army in the case before us, has estopped the government from enforcing a law passed by Congress. Unless a law has been repealed or declared unconstitutional by the courts, it is a part of the supreme law of the land and no officer or agent can by his actions or conduct waive its provisions or nullify its enforcement.

Accordingly, we conclude that the plaintiff has failed to show that the provisions of 10 U.S.C. §§ 1331-32 (1964) do not apply to him, and since he has not completed 20 years of active service in the Army and Active Reserve prior to reaching age 60, he is not entitled to retired pay.

We also conclude that it would serve no useful purpose to stay proceedings in this case pending a new application by plaintiff to the Army Board for the Correction of Military Records for the correction of his military record to show that he has 20 years of qualifying service necessary to establish his entitlement to retired pay benefits, because the Board has already considered and rejected this proposition, and for the further reason that the Board could not as a matter of law act favorably on plaintiff's request.

In view of the above, the petition is dismissed.

DAVIS, Judge (concurring in the result):

Unlike the court I do not reach the controversial issue of estoppel, involving as it does the much criticized and much defended doctrine of Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). I rest my vote for the defendant on the simpler ground of the Correction Board's obvious disbelief in plaintiff's testimony as to what Colonel Powell said. The point is not what plaintiff may have mistakenly gathered from this conversation but whether his understanding was factually and properly based on the colonel's actual words.

Plaintiff has now been twice before the Board and his petitions for relief twice rejected. I conclude, especially from the administrative finding quoted by Judge Skelton, that the Board was not impressed with the accuracy of plaintiff's recollection of the single oral interchange on which he must ground his claim of estoppel.[1]

The Board's view of the facts is important because we are reviewing its determination to see whether there is substantial supporting evidence. The holding of a *de novo* trial does not change this standard. See Brown v. United States, 396 F.2d 989, 991-992, 184 Ct.Cl. 501, 503-504 (1968). Even though the trial commissioner accepted the accuracy of Colonel Montilla's version of the conversation with Colonel Powell, I cannot fault the Board (which heard plaintiff itself) for taking another view on that point. Nor can I characterize the Board's position as arbitrary or unsubstantiated simply because the other trier came to the opposite conclusion. Such differences in fact-finding are quite common.

If the administrative view of the evidence is accepted as adequate, plaintiff clearly has no case since, on those findings, nothing was said to mislead him.

## FINDINGS OF FACT

The court having considered the evidence, the report of Trial Commissioner Mastin G. White, and the briefs and argument of counsel, makes findings of fact as follows:

1. The plaintiff was born on March 2, 1906, in San Juan, Puerto Rico.

2. The plaintiff graduated from the Medical School of the University of Maryland in 1930. He then interned in the University Hospital, San Juan, Puerto Rico. After completing his internship, the plaintiff began the practice of medicine in the town of Cayey, Puerto Rico.

3. (a) The plaintiff was appointed a first lieutenant in the Medical Corps Reserve, Army of the United States, on

---

1. The court is obviously correct in its analysis of the letter of March 26, 1954.

March 8, 1934. He executed the oath of office on March 26, 1934.

(b) The plaintiff was reappointed a first lieutenant in the Medical Corps Reserve effective March 8, 1939.

(c) The plaintiff was promoted to captain, Medical Corps Reserve, on December 9, 1939.

4. The plaintiff performed the following tours of active military duty with the Army: April 11–24, 1935; May 1–14, 1936; June 17–30, 1938; May 7–20, 1939; July 20–August 2, 1940; October 14, 1940–October 13, 1941; and May 30, 1942–September 6, 1945.

5. (a) The plaintiff was promoted to the grade of major in the Medical Corps, Army of the United States, while on active military duty during World War II.

(b) On being released from active military duty at the end of World War II, the plaintiff was tendered, and he accepted, a commission as major in the Medical Corps, Officers' Reserve Corps, Army of the United States.

6. (a) Soon after being released from active military duty on September 6, 1945, at the end of World War II, the plaintiff opened an office for the practice of medicine in San Juan, Puerto Rico. He had not previously practiced in San Juan. The plaintiff still has his medical practice in San Juan.

(b) For a number of years after opening an office in San Juan, the plaintiff was extremely busy in his efforts to build up a medical practice there.

7. Being very busy in building up his medical practice after opening an office in San Juan, the plaintiff did not participate in Army Reserve activities after September 6, 1945 except to the limited extent indicated in subsequent findings. However, he continued to be interested in the Army and wished to be a member of the Active Reserve. It was the plaintiff's understanding up until November 1955 that his status as a member of the Active Reserve was dependent only upon his being physically fit to perform military duty and upon his willingness to perform such duty in the event of a call to active service. The plaintiff believed that he was physically fit to perform military duty, and he was willing to perform such duty if he should be called into active service.

8. The plaintiff was promoted to the grade of lieutenant colonel in the Medical Corps, Officers' Reserve Corps, on December 18, 1946.

9. (a) On August 29, 1949, the Headquarters of the U. S. Army Forces Antilles, by means of paragraph 3 of Special Orders No. 170, transferred the plaintiff from the Active Reserve, in which he had served from March 26, 1934, to the Inactive Reserve.

(b) At the time of the transfer to the Inactive Reserve, the plaintiff was credited with 15 years, 3 months, and 5 days of qualifying service in the armed forces prior to July 1, 1949, toward establishing his eligibility for retired pay benefits from the Army.

(c) The plaintiff was not credited with as many as 50 points toward eligibility for retired pay benefits during any one-year period after July 1, 1949.

10. On October 21, 1949, the Headquarters of the U. S. Army Forces Antilles, by means of paragraph 4 of Special Orders No. 212, assigned the plaintiff to the Antilles ORC Control Group (Inactive).

11. (a) The plaintiff did not receive any notice from the Army relative to the actions mentioned in findings 9 and 10.

(b) The plaintiff had moved his residence from No. 1 King Court, Santurce, Puerto Rico, to No. 1111 Magdalena Avenue, Santurce, in September 1948. He notified the post office on the regular form regarding this change of address, but he did not notify the Army until 1951 (see finding 12). The plaintiff was aware that he should notify the Army with reasonable promptness of any permanent change of address.

(c) After August 29, 1949, the plaintiff believed that he was still a member of the Active Reserve and that such status, if maintained for a total of 20

years, would qualify him for retired pay benefits from the Army after he reached the age of 60 years. The plaintiff was unaware of the requirement, which became effective on July 1, 1949, that a reservist must earn at least 50 points per year through specified activities in order for any annual period to constitute qualifying service toward establishing eligibility for retired pay benefits. The plaintiff learned of the point system for reservists in about 1951, but he believed that it related only to eligibility for promotion.

12. (a) Under the date of August 6, 1951, the Headquarters of the United States Army Forces Antilles addressed a letter to the plaintiff at 1 King Court, Santurce, Puerto Rico, stating in part as follows:

1. Reference is made to letter this headquarters, subject as above, dated 6 April 1951, in which you were requested to complete a DA AGO Form 353 (Reserve Officers Qualification and Availability Questionnaire) as required under the ORC Service Evaluation Program, and return to this headquarters. This letter further requested that you report to the Induction Station, Fort Buchanan, Puerto Rico for a physical examination also required under the same program.

2. To date, this headquarters has not received the completed questionnaire from you. Further, the Induction Station, Fort Buchanan, Puerto Rico, has informed this headquarters that you have not reported for the physical examination.

3. As a Reserve officer, you are reminded of your primary obligation to cooperate with this program, especially in considering the value of the program in making current the records and other information maintained for you in this headquarters. If you have received the letter referred to in paragraph 1 above, and have not complied with the provisions thereof, it is requested that you do so without further delay.

4. In the event that you did not receive referenced letter, paragraph 1 above, or if you did receive it and have misplaced the forms, please inform this headquarters immediately so that duplicate forms and detailed instructions may be furnished you.

(b) The communication referred to in paragraph (a) of this finding was forwarded to the plaintiff at his then address, 1111 Magdalena Avenue, Santurce, and was received by him. On August 9, 1951, the plaintiff acknowledged such communication, stated that he had not received the letter dated April 6, 1951, gave his correct address, asked that DA AGO Form 353 be sent to him at his correct address, and also asked that a change-of-address form be sent to him.

(c) Following the receipt of the plaintiff's response dated August 9, 1951, the Headquarters of the U. S. Army Forces Antilles wrote to the plaintiff at his correct address on August 11, 1951, and directed that he report not later than August 17, 1951, to the Medical Examining Board, Induction Station, Fort Buchanan, Puerto Rico, for a physical examination in connection with the ORC Service Evaluation Program.

(d) In accordance with the directive dated August 11, 1951, the plaintiff promptly reported to the place designated and was given a physical examination.

13. (a) By means of a communication dated October 28, 1952, the Headquarters of the U. S. Army Caribbean informed the plaintiff that he was eligible for an indefinite-term Reserve appointment, in lieu of his then-current 5-year appointment, and asked that he execute and return certain enclosed papers, including an oath of office, if he agreed to accept the indefinite-term appointment.

(b) By means of a communication dated November 20, 1952, the plaintiff informed the Headquarters of the U. S. Army Caribbean that he agreed to accept an indefinite-term appointment as a Reserve commissioned officer in the Army. At the same time, the plaintiff returned, properly executed, the forms which had been transmitted to him.

14. (a) In a communication which the Headquarters of the U. S. Army Forces Antilles sent to the plaintiff under the date of March 25, 1954, he was informed that "Records at this station indicate that you completed 20 years service, which is creditable in the computation of basic pay, on 7 Mar 1954"; and that he was required to complete an enclosed DA Form 1041, indicating whether he did or did not desire, upon reaching the age of 60, to receive reduced retired pay in order to provide an annuity for his dependents after his death.

(b) In response to the communication mentioned in paragraph (a) of this finding, the plaintiff on April 2, 1954, informed the Headquarters of the U. S. Army Forces Antilles that he did not desire to receive reduced retirement pay in order to provide an annuity for his dependents.

15. (a) On or about November 2, 1955, the Headquarters of the U. S. Army Forces Antilles sent to the plaintiff an extract copy of paragraph 36 of Special Orders No. 212, indicating (among other things) that the plaintiff was assigned to the 7573d USAR Control Group, a unit of the Inactive Reserve.

(b) Upon receiving the information mentioned in paragraph (a) of this finding, the plaintiff went to the local office of the Organized Reserve and talked to the Senior Army Advisor assigned to that office, Colonel Charner W. Powell. The plaintiff told Colonel Powell that he wanted to stay in the Active Reserve and did not want to be transferred to the Inactive Reserve if the transfer would adversely affect his entitlement to retired pay benefits upon reaching the age of 60. Colonel Powell, after examining a file of papers relating to the plaintiff's military career, stated to the plaintiff that there was nothing for the plaintiff to worry about; that the plaintiff had served in the Active Reserve for 20 years; and that he would commence drawing his retired pay on reaching the age of 60.

(c) The plaintiff was 49 years of age at the time of the incidents referred to in this finding.

16. (a) On February 29, 1956, the Headquarters of the U. S. Army Forces Antilles wrote a letter to the plaintiff, stating in part as follows:

1. You have failed to maintain requirements for retention in the reserve program of the United States Army Reserve.

2. Under present Department of the Army Regulations you must either be discharged from your commission or transferred to the Retired Reserve.

3. Should you desire a transfer to the Retired Reserve, you must submit a written request. In the event that a reply is not received by 14 March 1956, action will be taken by this headquarters to effect your discharge.

(b) The plaintiff replied on March 7, 1956, to the letter mentioned in paragraph (a) of this finding. The plaintiff stated in part that "I request to be transferred to the Retired Reserve."

17. (a) Under the date of February 9, 1966, the plaintiff believing that he would be entitled to commence receiving retired pay from the Army after passing his 60th birthday on March 2, 1966, submitted to the Commanding Officer of the U. S. Army Administration Center in St. Louis, Missouri, an "Application for Retired Pay Benefits" beginning April 1, 1966.

(b) The Commanding Officer of the U. S. Army Administration Center in St. Louis, Missouri, denied the plaintiff's application on March 1, 1966, and stated as follows:

This is with reference to your application for retired pay.

Title 10, United States Code, Chapter 67 authorizes retired pay for current and former members of the reserve components who have attained age 60 and completed a minimum of 20 years of qualifying service. The official records show that you completed 15 years, 3 months and 5 days of qualifying service as shown on the inclosed statement of service.

Service in an inactive section of a Reserve component (Inactive, Honorary

or Retired Reserve), may not, by law, be credited as qualifying service. Accordingly, your service in the Inactive Reserve and Retired Reserve from 29 August 1949 to 2 March 1966, your 60th birthday, may be credited for basic pay purposes only.

Having completed less than the minimum service requirement prescribed by law, you are not eligible for retired pay benefits.

18. (a) The plaintiff next applied to the Army Board for Correction of Military Records and asked that his military record be corrected to show that he had the minimum 20 years of qualifying service necessary to establish his entitlement to retired pay benefits.

(b) After holding a hearing on August 23, 1967, the Army Board for Correction of Military Records made findings and conclusions, and recommended that the application be denied.

(c) The Under Secretary of the Army approved the findings, conclusions, and recommendations of the Army Board for Correction of Military Records, and denied the plaintiff's application on November 2, 1967.

19. The present court action was instituted by the plaintiff on December 6, 1968.

20. The plaintiff failed to complete, before reaching the age of 60, the minimum 20 years of qualifying service essential to establish his eligibility for retired pay benefits from the Army.

### CONCLUSION OF LAW

Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes that plaintiff's motion to stay proceedings should be, and the same is hereby denied, and the court further concludes as a matter of law that the plaintiff is not entitled to recover, and his petition is, accordingly, dismissed.