This pay claim is brought under 28 U.S.C. § 1491 to undo the result of an adverse action wherein plaintiff Leary was removed from his position as a Deputy U. S. Marshal, GS-9. The petition inartfully invokes various other and inapplicable provisions, 28 U.S.C. §§ 1331,1361, 2301 and 5 U.S.C. §§ 701-706. We treat the case, as defendant does, as brought under the provision of law to which claims of plaintiffs variety naturally relate. Defendant moves for summary judgment on merit grounds. There is no cross-motion. We are of the opinion that there is no triable issue of fact and the case is suitable for summary judgment disposition. We make this decision on the briefs, without oral argument.
Plaintiff, with another Marshal of lower grade acting under plaintiffs supervision, guarded a prisoner on a commercial airliner flight from Norfolk, Virginia, via Charleston, South Carolina, to Miami, Florida. Plaintiff discovered the pilot was an old friend and visited him in the cockpit. The pilot directed that the two Marshals and the prisoner be placed without charge in unoccupied seats in the first-class section. As all air travelers know, unlimited free access to the airline’s liquor stores is a perquisite of such seating. Both Marshals and the prisoner took full advantage of this though it is contrary to regulation for a Marshal to drink on duty or allow a prisoner to do so. The number of alcoholic drinks consumed is in dispute, but the hearing examiner found they were not so numerous as to disable the Marshals from performing their duty. The first-class seating violated a regulation requiring prisoners in flight to be seated at the extreme rear of the aircraft, other passengers being asked to move, if necessary. Plaintiff left the prisoner unguarded on several occasions while visiting his friend in the cockpit. The answers given by plaintiff when the matter was investigated were found to be false in *679 several particulars and were made the subject of added charges. Other misconduct occurred incident to the same airplane ride, that need not be further detailed, except, e.g., that plaintiff terrified the female flight attendants by telling them, falsely, that the prisoner was a murderer and rapist. Plaintiffs record showed a prior offense of similar character.
Plaintiff requested a hearing and the agency provided one; the hearing examiner found the facts in great detail, of which the above is but the briefest summary. Plaintiff says the associate director promised plaintiffs then counsel he would abide by the "decision” of the examiner. She found the facts, she exonerated plaintiff of certain charges, and found others substantiated. She conceded that she had found plaintiff guilty on enough charges to sustain the dismissal the agency proposed, but she recommended the penalty be reduced to one month’s suspension with a one grade demotion. The agency decided to adhere to its intention to dismiss, however, and the plaintiff had exhausted his remedies with the Civil Service Commission.
Plaintiff attacks the procedure followed in several ways, but on reference to the proper statutes and regulations we do not find any substantial procedural error in the record. Of more interest to the court, because more novel, is the allegation that the agency was bound, as by a court stipulation, by the alleged undertaking of the associate director to "abide by the decision” of the hearing examiner. The reality to this so-called stipulation turns on the bald assertion of counsel, no affidavit being provided as our Rule 101 contemplates. It appears the stipulation, if made, was with original counsel whose services were unsatisfactory and who was replaced by present counsel. It might be difficult to obtain original counsel’s affidavit in the circumstances, but at least plaintiff could tell us by affidavit what he believes occurred, why he believes it, and whether he did anything differently in the prosecution of his case, because of his belief. It is a story that much needs corroborating detail "to lend artistic verisimilitude to an otherwise bald and unconvincing narration.” It is certainly arguable that the "decision” of the hearing examiner was that the substantial evidence of misconduct was quite sufficient to *680 support dismissal, while her recommendations against dismissal was not a "decision” but only a recommendation for clemency. In other words, without the exact text of the alleged stipulation, it is impossible to tell whether or not the agency has complied with it.
Assuming we answered this question favorably to plaintiff, the next question would next arise whether the stipulation bound defendant. The associate director was not, of course, counsel in a lawsuit. Supposing he was personally bound, the fact remains he did not make the final decision to remove. The director did. The associate director disagreed with parts of the findings and as the regulations prescribed in such a case, referred the matter to the director for resolution. If the alleged stipulation bound the associate director to effectuate an examiner’s report he disagreed with, there would be a serious question whether such a commitment would bind the government in view of the noncontractual nature of federal employment. Cf. Montilla v. United States, 198 Ct.Cl. 48, 457 F.2d 978 (1972).
Where plaintiff does not give us full verified details as to the facts, and suggests no persuasive answer to the obvious legal problem in his path, we do not think plaintiff is entitled to a trial to determine the reality and exact terms of the alleged stipulation.
If, as here, the penalty appears reasonably related to agency goals, i.e., has a visible nexus with the efficiency of the service, normally we do not conduct inquiries whether other employees of the agency were more leniently treated for similar offenses. Jones v. United States, 223 Ct.Cl. 158, 617 F.2d 233 (1980). Plaintiff, separately from that issue, still argued the penalty was excessive, but virtually has abandoned the point. The facts of the case are not without their amusing aspects, but it is understandable that agency heads, concerned to maintain a record of faithful performance of demanding duty, should see less humor in the incidents than others may. The carelessness the fact findings reveal could have had serious consequences, and it is more good fortune than good management that no disaster occurred. The celebrated Murphy and his law were off duty for once: something that could have gone wrong did not go wrong. And this was not plaintiffs first offense.
*681 Accordingly, defendant’s motion for summary judgment is sustained, and the petition is dismissed.
Plaintiffs motion for rehearing was denied March 20, 1981.