Marie M. SELLERS

v.

The UNITED STATES.

No. 607–82C.

United States Claims Court.

Oct. 25, 1983.

Gary C. Reiter, Minneapolis, Minn., for plaintiff; Keith A. Dunder and Mahoney, Dougherty & Mahoney, Minneapolis, Minn., of counsel.

Jane W. Vanneman, Washington, D.C., for defendant; Asst. Attys. Gen. J. Paul McGrath, David M. Cohen, and Thomas W. Petersen, Washington, D.C., of counsel.

OPINION

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

Marie M. Sellers (the plaintiff) filed this action to obtain reimbursement under the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) for expenses which she incurred while receiving medical care in civilian institutions.

Payments under CHAMPUS for medical care provided to active and certain former military personnel, and their dependents, from civilian sources are authorized by 10 U.S.C. §§ 1071–1090 (1982). The purpose

of the program, as stated in section 1071, "is to create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services and for their dependents."

The defendant has filed a motion for summary judgment.

It appears that the defendant's motion should be granted.

### The Facts

For the purposes of its summary judgment motion, the defendant accepts as true the properly pleaded facts in the plaintiff's complaint. They will be summarized in this part of the opinion.

The plaintiff is the unremarried widow and dependent of the late Lt. Colonel Harry F. Sellers, U.S. Army, who was killed while serving in the Philippines during World War II.

On September 2, 1977, the plaintiff, then more than 73 years of age, was admitted as a patient to St. Mary's Hospital in Rochester, Minnesota, for surgical procedures on September 7, 1977. Following the surgery, she suffered a shock episode on or about September 10, 1977; and she continued as a patient at St. Mary's Hospital until November 11, 1977.

On November 11, 1977, the plaintiff was transferred to a division of Abbott-Northwestern Hospital, where she continued as a patient until May 26, 1978.

After May 26, 1978, the plaintiff was a patient at St. Mary's Rehabilitation Center in Minneapolis, Minnesota, until August 2, 1978.

Since August 2, 1978, the plaintiff has received nursing home care at St. Therese's Nursing Home in New Hope, Minnesota.

The plaintiff was entitled to, and received, financial assistance from the Government under the Medicare hospital insurance benefits program, authorized by 42 U.S.C. § 1395c et seq. (1976 and Supp. V), in connection with the hospital expenses which she incurred during the period between September 2, 1977, when she entered St. Mary's Hospital, and January 29, 1978, at which time she was a patient at Abbott-Northwestern Hospital.

While a patient at Abbott-Northwestern Hospital, the plaintiff received a "Notice of Medicare Claim Determination" dated February 9, 1978, which stated in part as follows:

Under the Medicare law, you are eligible for 90 days of inpatient hospital care in each benefit period and, in addition, for a "lifetime reserve" of 60 more days. Our records indicate that you have exhausted your total 90 days of hospital care and the 60 "life-time reserve" days. Therefore, beginning 1–30–78 no further hospital insurance benefits can be paid for you in this benefit period.

In connection with this determination, it may be mentioned that the Medicare legislation provides, in 42 U.S.C. § 1395d(b), that payment for services furnished an individual during a spell of illness may not be made for—

(1) inpatient hospital services furnished to him during such spell after such services have been furnished to him for 150 days during such spell minus 1 day for each day of inpatient hospital services in excess of 90 received during any preceding spell of illness * * *.

After learning that she had exhausted her hospital insurance benefits under the Medicare program for the then-current benefit period, the plaintiff inquired of a government representative (identity unknown) concerning her eligibility for coverage under the CHAMPUS program. She was informed that she was eligible for CHAMPUS benefits and would be entitled to such coverage if she would obtain a Uniformed Services Identification and Privilege Card and if she would present a Notice of Medicare Claim Determination with claims submitted for CHAMPUS benefits. Thereafter, the plaintiff applied for, and was issued by Joan Miller, an agent of the Government, at the Ft. Snelling Federal Building in Minneapolis, Minnesota, a Uni-

formed Services Identification and Privilege Card. This card stated that, effective January 30, 1978, the plaintiff was entitled to receive medical care at civilian health-care facilities. Also, Joan Miller assured the plaintiff that this card, together with a Notice of Medicare Claim Determination, would entitle her to CHAMPUS benefits coverage.

Because of the assurance that she was eligible for CHAMPUS benefits, the plaintiff remained an inpatient in a division of Abbott-Northwestern Hospital and incurred medical expenses which she would not have incurred in the absence of such assurance.

Subsequently, the plaintiff submitted numerous medical bills to Wisconsin Physicians Service in Madison, Wisconsin, an agent of the Government for receiving and adjudicating claims for CHAMPUS benefits submitted on behalf of persons living in the State of Minnesota. On October 31, 1978, Wisconsin Physicians Services denied the claims submitted by the plaintiff. The reason for the denial was stated as follows:

> The fact that Mrs. Sellers was eligible for Medicare, Part A, even though benefits for that period had been exhausted, made her ineligible for all CHAMPUS benefits.

The plaintiff's hospital and medical expenses incurred in civilian institutions since January 30, 1978, for which reimbursement is sought in this action, have aggregated $16,268.71.

### Plaintiff's Eligibility for CHAMPUS Benefits

■ The CHAMPUS legislation provides, in 10 U.S.C. § 1086(c)(2), that the dependent of a member of a military service who died while on active duty for a period of more than 30 days is eligible for health benefits under the CHAMPUS program. The plaintiff clearly falls within this category.

On the other hand, section 1086(c), after stating the standard for eligibility mentioned in the preceding paragraph, goes on and further provides as follows:

> However, a person who is entitled to [Medicare] hospital insurance benefits under part A of title XVIII of the Social Security Act (42 U.S.C. § 1395c et seq.) is not eligible for health benefits under this act.

Therefore, the primary question to be decided at this time, on the defendant's motion for summary judgment, is whether the plaintiff, who was entitled to and received hospital insurance benefits under the Medicare program up to and including the day before January 30, 1978, continued to be "entitled" to such benefits on January 30, 1978, and thereafter. A negative answer to this question would mean that the plaintiff was eligible, and an affirmative answer would mean that the plaintiff was not eligible, for CHAMPUS benefits on and after January 30, 1978, the time involved in this case.

In regulations issued by the Secretary of Defense for the CHAMPUS program, the statutory restriction on eligibility previously quoted from 10 U.S.C. § 1086(c) is implemented by a regulation (32 C.F.R. § 199.-9(e)(vi)(a)) stating in part as follows:

> (a) Loss of CHAMPUS eligibility: Age 65. All CHAMPUS beneficiaries, except dependents of active duty members, automatically lose CHAMPUS eligibility at age 65 on the assumption that they have become eligible for Medicare. If the person is not entitled to Part A of Medicare, he or she must file a Social Security Administration "Notice of Disallowance" certifying to that fact with the Uniformed Service responsible for the issuance of his or her identification card * * *.

This regulation was doubtless based on the report of the Armed Services Committee of the Senate on the CHAMPUS legislation, which stated in part as follows:

> * * * The committee has adopted the recommendation of the Department of Defense providing that those eligible for Social Security Medicare at age 65 will not be eligible for the benefits in civilian medical facilities under the legislation. * * * The present program authorizing the use of military facilities on a space-available basis without regard to age

would be continued. At age 65 the two programs—Social Security Medicare and the use of military medical facilities—would appear to be sufficient for the retired group. [S.Rep. No. 1434, 89th Cong., 2d Sess. 3–4, *reprinted in* 1966 U.S.Code Cong. & Ad.News 3082, 3084–85.]

The plaintiff contends, however, that inasmuch as the plaintiff had exhausted her Medicare benefits for the then-current benefit period by the close of January 29, 1978, and she could no longer call upon the Government for financial assistance under the Medicare program during the remainder of such period, she was not "entitled" to Medicare benefits as of January 30, 1978, and thereafter. From this premise, the plaintiff asserts that she was eligible for CHAMPUS benefits under the applicable statutory standard, *i.e.,* as the dependent of a member of a military service who died while on active duty.

The plaintiff, however, confuses *entitlement* to Medicare benefits with the scope of the benefits available pursuant to an entitlement.

The plaintiff's entitlement to Medicare hospital insurance benefits was based upon the circumstance that she was over the age of 65 and was entitled to retirement benefits under the Social Security Act (see 42 U.S.C. § 1395c). This did not change as of January 30, 1978. The plaintiff was still over 65, and she was still entitled to retirement benefits under the Social Security Act. The difference was that she had exhausted the Medicare benefits available pursuant to her entitlement for the particular benefit period.

As the plaintiff was entitled to Medicare hospital insurance benefits during the period involved in this litigation, she was not eligible for CHAMPUS benefits.

### The Estoppel Issue

■ The plaintiff's fall-back position in the litigation is that, in any event, the Government is estopped from denying CHAMPUS benefits to the plaintiff. This contention is based on the circumstances

that (as indicated earlier in the opinion) the plaintiff, after the exhaustion of her Medicare benefits, inquired of a government representative (identity unknown) as to whether she was eligible for CHAMPUS benefits; that she received an affirmative answer and was advised to obtain a Uniformed Services Identification and Privilege Card; that the plaintiff then applied for such a card and it was issued to her by Joan Miller, a government agent; that the card stated she was entitled to receive medical care at civilian health-care facilities effective January 30, 1978; that Joan Miller assured the plaintiff that this card, together with a Notice of Medicare Claim Determination, would entitle her to CHAMPUS benefits; and that, because of the assurance that she was eligible for CHAMPUS benefits, the plaintiff remained an inpatient in a division of Abbott-Northwestern Hospital and incurred medical expenses which she would not have incurred in the absence of such assurance.

In the first place, it should be noted that it is unknown what connection (if any) the unidentified government representative had with the administration of the CHAMPUS program, and it is also unknown whether it was disclosed to such representative and to Joan Miller that the plaintiff was enrolled in, and had been receiving benefits under, the Medicare program.

More importantly, however, no government representative had the authority to nullify or contradict the statutory provision in 10 U.S.C. § 1086(c) which plainly states that an individual who is entitled to Medicare hospital insurance benefits is not eligible for CHAMPUS benefits. *Montilla v. United States,* 198 Ct.Cl. 48, 63, 457 F.2d 978, 986 (1972); *Parker v. United States,* 198 Ct.Cl. 661, 667, 461 F.2d 806, 809 (1972). Furthermore, the Government must enforce a law enacted by Congress, and it is not estopped from doing so by any unauthorized acts or conduct of its agents. *Montilla v. United States, supra,* 198 Ct.Cl. at 64, 457 F.2d at 986–87. This principle is not affected by the circumstance that, regrettably, hardship may have resulted through re-

liance upon such unauthorized actions or conduct. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 383, 68 S.Ct. 1, 2, 92 L.Ed. 10 (1947).

### Conclusion

For the reasons stated in the opinion, the court concludes that there is no genuine issue as to any material fact, and that the defendant is entitled to a judgment as a matter of law.

Accordingly, the defendant's motion for summary judgment is granted.

The complaint will be dismissed.

IT IS SO ORDERED.