Mary E. WARD

v.

The UNITED STATES

Donna Sue Ward Pipkin, Third-Party Plaintiff.

No. 350–78.

United States Court of Claims.

March 25, 1981.

M. J. Vanden Eykel, Dallas, Tex., attorney of record for plaintiff. Seeligson, Douglass & Falconer, Dallas, Tex., of counsel.

Cheryl S. Rome, with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Charles M. Bradshaw, Dallas, Tex., attorney of record for third-party plaintiff.

Before COWEN, Senior Judge, and DAVIS and NICHOLS, Judges.

## OPINION

NICHOLS, Judge:

This military pay case comes before the court on defendant's exceptions and third-party plaintiff's exceptions to Senior Trial Judge White's opinion, findings of fact and conclusions of law. Plaintiff has one minor exception. Plaintiff and third-party plaintiff here contest for the pay and allowances of a now deceased Air Force officer, which the Air Force retained for him as long as his death was not established. Defendant is a stakeholder, but has a distinct preference for the claim of third-party plaintiff, has filed a brief in her support, and made an oral argument. After trial, Trial Judge White held that pursuant to paragraph (4) of 10 U.S.C. § 2771(a), plaintiff was entitled to the disputed amount of pay credited to the officer's account after February 12, 1972.

Upon defendant's and third-party plaintiff's exceptions to that decision, submitted to the court on briefs and oral arguments of counsels, we reject the trial judge's conclusions, and we determine that third-party plaintiff is entitled to recovery in accordance with this court's decision as hereinafter set forth. We adopt his findings of fact but they are not printed as they have been furnished to the parties. If any fact statement hereinafter lacks counterpart in the findings, it may be taken as an additional finding of the court.

### I

The Air Force officer was Captain Neal Clinton Ward, deceased. Plaintiff, Mary E. Ward, was the mother of Neal Clinton Ward. Third-party plaintiff, Donna Sue Ward Pipkin, was at one time the wife of Neal Clinton Ward.

Captain Ward and third-party plaintiff were married on March 12, 1966. Texas was the state of their marital domicile throughout their marriage, and they had no children. Third-party plaintiff's maiden name was Donna Sue Streetman, and to avoid confusion she is hereinafter so called.

On May 27, 1967, Neal Clinton Ward entered active military service and trained and became an aircraft pilot. He was sent overseas on November 1968 to Southeast Asia and disappeared there while piloting a combat mission on June 13, 1969. He flew the lead aircraft of a flight of two. His wingman observed gunfire from the ground, lost sight of Ward in a cloud, and then observed a large fire and aircraft wreckage on the ground. Ward was never heard from again. Captain Ward was officially placed in the status of "missing in action" (MIA) by the Air Force on June 13, 1969. Nine years later his official status of MIA was changed to "killed in action" (KIA) on June 20, 1978. In accordance with 37 U.S.C. § 552, the Air Force regularly credited pay and allowances to the account of Captain Ward after his disappearance and until his status was changed to KIA.

On December 14, 1968, Neal Clinton Ward executed Air Force Form 246, entitled "Record of Emergency Data." In this form, Neal Clinton Ward listed "Donna S Streetman" as his "Spouse" and "Mary E Ward" as his "Mother;" he designated "Donna S Streetman * * * 100%" as the "Person to receive allotment if Missing;" and he designated "Donna S Streetman (Wife) 70% * * * [and] Mary E Ward (Mother) 30% * * *" as the "Beneficiary(s) for unpaid pay and allowances including Airman's Deposits" if he should die while in the military service. These designations were never changed by Neal Clinton Ward.

After Captain Ward's disappearance in June 1969 the Air Force regularly made allotment payments to Donna S. Streetman pursuant to Captain Ward's designation of her as the "Person to receive allotment if Missing."

Three years after Captain Ward disappeared, Donna S. Streetman married Stephen Pipkin on February 12, 1972. She believed Ward was dead. She then informed the Air Force in February 1972 that it should discontinue sending allotment checks to her. No further allotment payments were made out of Captain Ward's account after February 1972. The Air Force continued to credit pay and allowances regularly to the account until June 1978 when it issued DD Form 1300 which fixed the presumptive date of death of Captain Ward.

During the nine year period when Captain Ward was officially listed as MIA by the Air Force the pay and allowances credited to his account reached a total amount of more than $221,000. Of this amount the Air Force paid Streetman $35,365.30 in allotment checks during the period between June 13, 1969, and the end of February 1972. This amount is not contested by plaintiff in this case. After June 20, 1978 (when Captain Ward's status was changed to KIA) the Air Force paid plaintiff $54,881 pursuant to Captain Ward's designation of "Mary E Ward (Mother)" as a beneficiary to receive 30 percent of "unpaid pay and allowances" if Neal Clinton Ward should die while in the military service. This sum is also not involved in the present litigation.

The Air Force still retains $131,223.18 in Captain Ward's account and this represents 70 percent of the amount credited to the account between February 12, 1972, and June 20, 1978. This is the amount at issue here. Donna S. Streetman claims $130,-272.92 of the amount based on Captain Ward's designation of her in Form 246 as the beneficiary to receive 70 percent of unpaid pay and allowances if he should die while in military service. Plaintiff contends that Streetman is not entitled to 70 percent or to any money credited to Captain Ward's account after February 1972, the date on which Streetman married Stephen Pipkin.

Trial Judge White held that Donna S. Streetman was widowed as the result of the death of Neal Clinton Ward on June 13, 1969, when the aircraft he was piloting disappeared. She subsequently contracted a marriage he deemed valid with Stephen Pipkin in February 1972. Consequently she was not the wife or widow of Captain Ward on June 20, 1978, the date on which his account was to be settled and funds distributed according to 10 U.S.C. § 2771. Therefore Trial Judge White ruled that Streetman was entitled to 70 percent of the amount credited prior to February 1972 but none after that date. Plaintiff was awarded 70 percent of the amount credited during the period of February 12, 1972, to June 20, 1978.

The trial judge indicates in his proposed opinion that the circumstances of Captain Ward's disappearance lead inescapably to the conclusion that he died on the date his aircraft crashed. But he does not formally so find and properly does not. In his view of the case this had a bearing on the validity of Donna Sue Streetman's remarriage in 1972, and if that was valid this in turn bears on the validity of her claim. In our view, there can be no question on this record but that she acted in an honorable, disinterested manner. In this year of grace 1981, whatever the validity of her remarriage when she made it, or when her children were born, the law will protect her against the consequences of any derogatory inference from the facts in this case. In our view, it is unnecessary to determine her marital status in 1972 or any subsequent date to decide this case because, as will appear, her claim to the retained funds rests on her identity as Donna S. Streetman, the person designated by Captain Ward on filling out Form 246, December 14, 1968, whether that person was or was not validly married to any person on any later relevant date.

## II

The distribution of a deceased serviceman's military account is governed by Section 2771 of Title 10 U.S.C., which provides:

§ 2771. Final settlement of accounts: deceased members

(a) In the settlement of the accounts of a deceased member of the armed forces who dies after December 31, 1955, an amount due from the armed force of which he was a member shall be paid to the person highest on the following list living on the date of death:

(1) Beneficiary designated by him in writing to receive such an amount, if the designation is received, before the deceased member's death, at the place named in regulations to be prescribed by the Secretary concerned.

(2) Surviving spouse.

(3) Children and their descendants, by representation.

(4) Father and mother in equal parts or, if either is dead, the survivor.

(5) Legal representative.

(6) Person entitled under the law of the domicile of the deceased member.

(b) Designations and changes of designation of beneficiaries under subsection (a)(1) are subject to regulations to be prescribed by the Secretary concerned. So far as practicable, these regulations shall be uniform for the armed forces, the Environmental Science Services Administration, and the Public Health Service.

(c) Under such regulations as the Comptroller General may prescribe, payments under subsection (a) shall be made by the military department concerned or the Department of the Treasury, as the case may be. Payment under clause (6) of subsection (a) shall be made—

(1) upon settlement by the General Accounting Office; or

(2) as otherwise authorized by the Comptroller General.

(d) A payment under this section bars recovery by any other person of the amount paid.

As the text reflects, prior law (now no longer codified) was different and authority construing it not here relevant. The most relevant amendment is by Pub.L.No. 85–861 (1958). See annotations to § 2771 in U.S. C.A. And it is a well established principle of law that federal statutory law alone governs military pay, and not state or common law concepts of contract rights. *Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); *Andrews v. United States*, 175 Ct.Cl. 561 (1966); and *Akerson v. United States*, 175 Ct.Cl. 551, *cert. denied*, 385 U.S. 946, 87 S.Ct. 320, 17 L.Ed.2d 226 (1966).

 We need not and do not follow Texas probate law to determine the distribution of Captain Ward's pay or to determine what Captain Ward's intent was or would have been regarding such distribution. Plaintiff contends that this court must follow the deceased serviceman's intent here, that is, we should determine who Captain Ward would have really wanted to receive his pay and allowances had he known his widow would remarry rather than adhere strictly to a rigid interpretation of § 2771. Plaintiff cites this court's decision in *Cherry v. United States*, Ct.Cl., 640 F.2d 1184 (1980), to support its position. However, *Cherry* is not applicable here. *Cherry* dealt with the Missing Persons Act, 37 U.S.C. §§ 551–558, while § 2771 controls the payment of deceased serviceman's unpaid pay and allowances. And unlike under the statute involved in *Cherry*, the Air Force here had neither the duty nor the authority to make changes in the allotment of pay and allowances in the supposed interest of the member, his dependents, or the United States. Section 2771 does not provide for the examination of a decedent's supposed or imputed or fictitious intent, but rather requires payment of funds exactly as specified in the deceased serviceman's written designation. If that is available and understandable, inquiry is at an end.

Having determined that § 2771 is controlling, mandatory, and to be strictly construed and applied, we must now determine how the provisions of that section are to be properly carried out here.

### III

 Captain Ward wrote his designations on Air Force Form 246 on line 15. The beneficiaries he designated to receive unpaid pay and allowances in the event of his death during military service were, "Donna

S Streetman (Wife) 70% * * *" and "Mary E Ward (Mother) 30% * * *." The trial judge attached significance to the fact that Captain Ward designated Donna S. Streetman (Wife) to receive his pay upon final settlement of his account. The trial judge decided that Captain Ward designated her in her capacity, and only in her capacity as his wife, to receive his pay if he died in the service, and when she became the wife of another, she was no longer the person designated on the form. Judge White noted that in her designation as beneficiary to receive allotments if Missing, line 16, Donna S. Streetman was listed by Captain Ward as "Donna S Streetman," only, and not as wife. And so Judge White inferred that the difference in designation reflected a difference in Captain Ward's intent.

Appreciation of the trial judge's error commences with this realization: the instructions for filling out Form 246 provided that, after giving the first name, middle initial, and last name, and the address of the intended beneficiary, the airman should state such person's "relationship." Captain Ward, instead of giving her address, wrote in line 15, "Same as item 5." Line 5 called for "Name and address of Spouse" and he had given the name and street address of Donna S. Streetman. He also wrote "(wife)" in line 15.

It is obvious that Captain Ward furnished these answers in order to fill out the form completely. He, as anyone else, would have realized the Air Force needed to know the relationship, if any, of the beneficiary (who need not have been the "spouse") in order to be sure of knowing the right beneficiary in case there were two of the same name. There was, to be sure, some tautology in telling them twice that Donna S. Streetman was his spouse or wife, but all of us are used to demands for tautology in filling out official forms and we conform more or less thinking tautology may be necessary to enable the computer to register our answers correctly. In writing just what the form demands, we are far from inserting arcane limitations on the scope of our answers.

Realizing apparently how weak the argument was, the trial judge looked at line 16 where Captain Ward designated Donna S. Streetman to receive his allotments if he was missing. As it was not again parenthetically stated she was his ("Wife"), the trial judge thought this was a difference in language indicating a difference in meaning: he probably meant on line 16 for Donna S. Streetman to receive his allotments whether his wife or not. But this overlooks the fact that on line 16 he did again cross-reference to line 5, where Donna S. Streetman was again listed a "Spouse." He may (though this is speculation) have thought there was enough tautology already to shortchange the computer a little, if it didn't know, reading line 16, the relationship of Donna S. Streetman, let it read the line immediately above, line 15, or let it follow his express cross-reference to line 5.

If the trial judge's reading is correct, Captain Ward intended Donna S. Streetman to obtain allotments if he were missing, whether or not she had remained his wife. Since the allotments came out of the same pot as the items dealt with in line 15, why he should be willing to overlook remarriage in case of one only and not the other is inexplicable, and the conclusion absurd.

The form and the answers elicited by it must be understood as a simple flyer about to go into combat would understand them. It would be natural, if he had in mind to limit his "spouse" to benefits that accrued while she remained his spouse, to say so. It would be wholly unnatural to expect such a result to flow from merely supplying information as to present fact demanded, if in tautological form, on an official government form.

It may also be noted that Donna S. Streetman was known as Donna S. Ward during her marriage to Captain Ward and is so named in his will. That he should have called her Donna S. Streetman in filling out Form 246 does not seem to have been required by the instructions and affords a clue to his intentions at least as persuasive as the supposed clue discovered by the trial judge. If, as we deny, such fragile clues

are to be invoked to limit or modify plain language, the clues in their totality are in no way unfavorable to the claim of Donna S. Streetman.

As it is uncontested that Donna S. Streetman was both spouse and wife on the date Captain Ward made out the form, and is the person he then intended to and did designate as a beneficiary, it becomes irrelevant whether at any subsequent date Donna S. Streetman ceased to be his spouse and wife. We therefore deem the inquiry conducted by the trial judge to delve into an irrelevancy in which we decline to be involved.

Donna S. Streetman was recommended for denial of the 70 percent of the amount credited to Captain Ward's account after February 12, 1972, because the trial judge found that she was not the wife or widow of Captain Ward on June 20, 1978, the date on which the account was to be finally settled. Trial Judge White concluded that Captain Ward died in the crash of his aircraft on June 13, 1969, and that third-party plaintiff was widowed on that date. And since Donna S. Streetman married Stephen Pipkin on February 12, 1972, the trial judge held that she was not Captain Ward's wife or widow thereafter.

■ As to the Air Force's determination of June 20, 1978, as Captain Ward's presumptive date of death, the trial judge was correct in pointing out that pursuant to the provisions of 37 U.S.C. § 555 the determination is conclusive on all executive departments and agencies of the United States. Furthermore, this court may indeed review such a determination and in certain instances we have decided that a claimant is entitled as a matter of right to a de novo trial concerning such determination. Bray v. United States, 207 Ct.Cl. 60, 73–74, 515 F.2d 1383, 1390–91 (1975); Montilla v. United States, 198 Ct.Cl. 48, 57, 457 F.2d 978, 983 (1972). However, such a review is necessary and justified only where there has been a showing that the determination was arbitrary or capricious and not supported by substantial evidence. Crone v. United States, 210 Ct.Cl. 499, 521, 538 F.2d 875,

887–88 (1976); Espartero v. United States, 152 Ct.Cl. 789, 791–92 (1961); and Alpuerto v. United States, 152 Ct.Cl. 270, 271 (1961). A Service date of death determination was held arbitrary and capricious in Midgett v. United States, 221 Ct.Cl. ——, 603 F.2d 835 (1979) which involved wholly different issues from those we confront here.

In the dispute before us there has been no allegation or showing that the determination was arbitrary or capricious. Therefore, we must and do accept the Service's determination that June 20, 1978, is the presumptive date of death. We do not adopt the trial judge's conclusion that Captain Ward died on the date that his aircraft crashed since the presumptive date of death as found by the Secretary is sufficient here, and indeed is a necessary foundation for the cases of both claimants, in that the existence of the fund both claim depends upon it. The challenge to it is gratuitous and needless.

Thus, we reject as irrelevant the finding that third-party plaintiff was not the wife or widow of Captain Ward on June 20, 1978. Third-party plaintiff is entitled to 70 percent of Captain Ward's pay and allowances because the deceased expressly designated her by name as the beneficiary and not because of her status as his wife or widow. Captain Ward's designation is not limited by the remarriage whether subsequent or prior to the date of death. It is not necessary that a beneficiary be a dependent of the deceased here. Again, this case is distinguishable from Cherry where the allotments for support were changed depending on the circumstances of the serviceman's dependents. In the case before us a designee need not be dependent upon, or even a relative of the serviceman according to Air Force Regulation 40513 (Defendant's Exhibit 2).

## CONCLUSION OF LAW

We therefore hold that third-party plaintiff, Donna Sue Streetman Ward Pipkin, is entitled to 70 percent of the amount credited to Neal Clinton Ward's account of pay and allowances both prior to and after Feb-

ruary 12, 1972. Plaintiff, Mary E. Ward, is entitled to the remaining 30 percent as designated to her by Captain Ward. Judgment is entered for Donna Sue Streetman Ward Pipkin in the amount of one hundred thirty thousand, two hundred seventy-two dollars and ninety-two cents ($130,272.92). Judgment will be entered for Mary E. Ward in the amount of nine hundred fifty dollars and twenty-six cents ($950.26). (This is in addition to the amount of $54,881 which has already been paid to her.)