**Thomas J. CAMPELL**

v.

**The UNITED STATES.**

No. 360–84C.

United States Claims Court.

Jan. 9, 1985.

Frederick J. Ludwig, New York City, for plaintiff.

Ronald A. Schechter, Washington, D.C., with whom were Acting Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Sandra P. Spooner, Washington, D.C., for defendant.

## OPINION

### ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The plaintiff, Thomas J. Campbell,[1] is a former civilian employee of the United States. He complains in this action that he was entitled to receive, under a contract implied in fact, but was denied, severance pay when he was involuntarily separated from the government service effective January 31, 1979.

The case is before the court on a motion which, when filed by the defendant, was designated as a motion to dismiss for lack of jurisdiction.

As the plaintiff is suing on the basis of an alleged contract implied in fact between himself and the United States, and has outlined the factual bases out of which the contract allegedly arose, the court has jurisdiction under 28 U.S.C. § 1491(a)(1) (1982) to consider and decide whether a valid contract between the parties actually existed (and, if so, whether it was breached by the United States). The statutory provision just cited expressly states in part that "[t]he United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded * * * upon any express or implied contract with the United States * * *."

Consequently, the pending motion will be considered as one for summary judgment. This is permissible because the parties seem to be in agreement concerning the basic facts of the case.

### The Facts

On August 20, 1969, while the plaintiff was employed by the United States Air Force in London, England, as a civilian Assistant Open Mess Manager, the plaintiff was officially notified that he had been reached for reduction in force ("RIF") due to the fact that his position would be abolished effective October 1, 1969. Then, on August 26, 1969, a Standard Form 50 was issued to the plaintiff relative to the RIF. This form stated (among other things), "Entitled to severance pay $227.20 per week for 46 weeks and $28.40 for one week."

Attached to the Standard Form 50 was a statement entitled "Severance Pay," which informed the plaintiff regarding the future stoppage or postponement of the severance pay if, before the full amount was paid to him, he were to be reemployed by the Federal Government, or employed by the Government of the District of Columbia, under various types of appointment. This statement did not, however, explain what would happen to payments of severance pay if the plaintiff were to be reemployed by the Federal Government and, at the end of such service, it should be determined

---

**1.** Although the plaintiff's name is spelled "Campell" in the complaint, copies of official documents attached to the complaint disclose that

"Campbell" is the correct spelling of the plaintiff's name.

that he was eligible to retire on a civil service annuity.

The plaintiff's involuntary separation from the Air Force was effective at the close of August 31, 1969. The following day, September 1, 1969, without any break in federal service, the plaintiff was appointed to a temporary position in the House of Representatives. Thereafter, without any break in service, the plaintiff occupied a series of positions with the Congress until January 31, 1979, when the plaintiff was involuntarily separated from his final congressional position.

At the time of the termination of the plaintiff's employment with the Congress, he was eligible to retire from the federal service with a civil service annuity.

Because of the plaintiff's continuous federal service after his involuntary separation from his position with the Air Force effective August 31, 1969, the payment of the severance pay referred to in the Standard Form 50 dated August 26, 1969, was postponed throughout the period from August 31, 1969, to January 31, 1979.

Following the termination of the plaintiff's employment with the Congress, he requested that he be paid the severance pay referred to in the Standard Form 50 dated August 26, 1969. The plaintiff's claim was later the subject of an opinion dated August 16, 1982, by the Comptroller General (B–207872). The Comptroller General held that, as the plaintiff was eligible for a civil service annuity on the date (January 31, 1979) when his employment with the Congress was terminated, he was not entitled to severance pay.

Thereafter, the plaintiff filed his complaint in this court on July 13, 1984.

### The Plaintiff's Theory

In support of his contention that a contract implied in fact existed between himself and the defendant concerning the payment of severance pay to him, the plaintiff relies on the Standard Form 50 which was issued to him on August 26, 1969, in connection with his RIF from the Air Force in London. He points out that the RIF notice which he received from the Air Force stated in part that "[f]ull information on the amount of severance pay and the method of payment will be furnished with the SF–50, Notification of Personnel Action, that will be issued at the time of your separation." He then refers to the Severance Pay statement which was attached to the Standard Form 50 when the latter was issued to him and which stated in part that "[i]f you are reemployed for full-time duty under a time limited appointment (either term or temporary) without a break in service or with a break in service of 3 calendar days or less, your severance pay is postponed until you are separated from the time-limited appointment."

The plaintiff argues that he accepted the defendant's offer, as set forth in the Standard Form 50, (1) by foregoing an offer of alternative employment from the Air Force, and (2) by accepting "employment in various temporary positions with the Congress of the United States under schedule that strictly conformed with defendant's SF–50."

### The Defendant's Position

The defendant's principal contention is that the plaintiff, during his period of service with the Air Force in London, was an appointee of, and not a contractor with, the United States; and, accordingly, that the nature of such employment was governed by relevant federal statutes and regulations, and could not have given rise to an express or implied-in-fact contract. In support of this contention, the defendant cites *Army and Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982).

### Discussion

The papers before the court indicate that the plaintiff's civilian service with the Air Force in London was under an appointment from competent authority. It is not necessary for the court to decide, however, whether the plaintiff's appointment by the Air Force precluded the creation of a sepa-

rate implied-in-fact contract between the plaintiff and the United States.

■ Assuming, *arguendo*, that it was the intention of the plaintiff and of the Air Force official who issued the RIF notice and the Standard Form 50 to the plaintiff that a contract implied in fact would be entered into concerning the ultimate payment of severance pay to the plaintiff even if he were to be reemployed for full-time duty under a time-limited appointment without a break in service, or with a break in service of 3 calendar days or less, and without regard to the situation existing at the conclusion of the subsequent employment, the critical point is that the Air Force official had no authority to enter into such a contract in contravention of a federal statute. An unauthorized act of its agent does not bind the United States. *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 711–12, 468 F.2d 922, 925 (1972).

The statutory provision in question, which now appears as 5 U.S.C. § 5595 (1982), has been in effect since 1967. It delineates when a federal employee is entitled to receive severance pay upon separation from the service. Subsection (a)(2)(B)(iv) precludes a federal employee from receiving severance pay upon separation from the service if such employee "at the time of separation from the service, has fulfilled the requirements for immediate annuity under * * * a statute or system."

In his complaint, the plaintiff does not contest the determination made by the Comptroller General that, as a temporary employee of Congress, the plaintiff had fulfilled the requirements for an immediate annuity upon his separation from the federal service on January 31, 1979.

The plaintiff's argument that the phrase "at the time of separation from the service," as used in 5 U.S.C. § 5595(a)(2)(B)(iv), refers to his separation from the service in 1969, at which time he had not fulfilled the requirements for a civil service annuity, must be rejected as inconsistent with the purpose of the severance pay legislation.

Our predecessor, the United States Court of Claims, had occasion to consider the purpose of the severance pay legislation in the case of *Akins v. United States*, 194 Ct.Cl. 477, 439 F.2d 175 (1971). In that case, the court said (194 Ct.Cl. at 484, 439 F.2d at 178) that the legislative history of the legislation "indicates that the express purpose of the severance pay provisions * * * was to afford monetary relief to Federal employees who, after long years of faithful public service, 'find themselves out in the cold without work and without retirement' [quoting from 111 Cong.Rec. 25677 (1965)]."

In the plaintiff's case, he was not actually "severed" from the federal service until January 31, 1979. It is true that he was RIF'd by the Air Force at the close of August 31, 1969, but the following day, September 1, 1969, he went on the payroll of the House of Representatives, and he was thereafter employed continuously by the Congress until January 31, 1979. At that time, the plaintiff was eligible to retire on a civil service annuity; and, hence, he did not "find * * * [himself] out in the cold without work and without retirement."

Therefore, in view of the plaintiff's entitlement to federal retirement benefits upon his actual separation from the federal service on January 31, 1979, he was precluded by 5 U.S.C. § 5595(a)(2)(B)(iv) (1982) from also receiving severance pay, irrespective of whether the plaintiff and the Air Force official who issued the Standard Form 50 to the plaintiff did or did not have a "meeting of the minds" to the contrary.

■ As the Court of Claims once stated, "[u]nless a law has been repealed or declared unconstitutional by the courts, it is a part of the supreme law of the land and no officer or agent can by his actions or conduct waive its provisions or nullify its enforcement." *Montilla v. United States*, 198 Ct.Cl. 48, 64, 457 F.2d 978, 987 (1972).

Accordingly, any purported implied-in-fact contract which the plaintiff and the

Air Force official who issued the Standard Form 50 to the plaintiff on August 26, 1969, may have intended to enter into would be invalid and unenforceable.

### Conclusion

For the reasons previously stated, the court concludes, upon the basis of the materials submitted by the parties, that there is no genuine issue as to any material fact necessary for the disposition of the case, that the plaintiff is not entitled to recover, and that the defendant is entitled to a judgment as a matter of law.

The defendant's motion for summary judgment is therefore granted.

The clerk will enter judgment dismissing the complaint.

IT IS SO ORDERED.