**Romeu Tenreiro DOS SANTOS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 213–88C.

United States Claims Court.

March 8, 1990.

Margie A.S. Lehrman, Washington, D.C., for plaintiff; George M. Chuzi, Kalijarvi & Chuzi, of counsel.

James M. Kinsella, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant; Halley Collums, Office of the Legal Advisor, Dept. of State, of counsel.

## OPINION

NETTESHEIM, Judge.

Having been reassigned to this judge after the completion of supplemental briefing, this civilian pay case is before the court after argument on plaintiff's motion for partial summary judgment and defendant's cross-motion for summary judgment.[1] The suit calls for resolution of the question whether jurisdiction is lacking to consider a money claim by a non-U.S. citizen employed by the State Department in a foreign country of which he is not a national.

## FACTS

Unless otherwise noted, all facts pertinent to defendant's cross-motion are undis-

puted. In March 1967 Romeu Tenreiro Dos Santos ("plaintiff"), a Portuguese citizen and resident of Zaire, Africa, applied to the United States Foreign Service for employment. As a result of this application, plaintiff secured an indefinite appointment as a plumbing specialist for the United States Embassy in Kinshasa, Zaire, where he remains an employee. Plaintiff's employment status is as an excepted service employee in the Foreign Service.

Plaintiff signed an employment memorandum in August 1967 that described the terms and conditions of his employment. The memorandum stated that United States laws and regulations of the United States Department of State ("State") govern plaintiff's salary. Administrative matters of the United States Foreign Service are subject to the Foreign Service Act of 1980, 22 U.S.C. §§ 3901–4173 (1988) (the "Act" or "FSA"). The administrative regulations of State, as set forth in the Foreign Affairs Manual (the "FAM"), control personnel administration for foreign service employees. 3 FAM §§ 930–937 (1982). The FAM contains regulations that specifically address the administration of compensation paid to State Department employees, including Foreign Service Nationals ("FSN's"), Expatriates, and Third Country Nationals ("TCN's"). The employment memorandum signed by plaintiff further lists factors for consideration in calculating plaintiff's salary, such as allowances for housing, transportation, and family expenses.

Plaintiff classifies as a FSN because he is a non-United States citizen employee of a United States agency working at an overseas post. The definition of a FSN encompasses several status categories, including Expatriates, TCN's, and Foreign Service Local Employees ("FSL's"). From September 1967 to March 1977, State treated plaintiff as a TCN. However, plaintiff received notice on March 27, 1977, that State had reclassified him to the status of "Expatriate." TCN's are distinct from Expatriates

---

**1.** Although defendant cross-moved for summary judgment on the merits, its motion sought dis-   missal for want of jurisdiction.

in that a TCN is a citizen of the host country, whereas an Expatriate is a citizen of neither the host country nor the United States.

Compensation comprises another factor distinguishing TCN's from Expatriates. Expatriates and most FSN employees receive their salaries in the form determined by State's FSN local compensation plan. TCN's are not paid in accordance with this plan, but, instead, receive 100 percent of their salary in U.S. dollars. From 1967 to 1972, plaintiff's status classification was that of a TCN, and, therefore, he received 100 percent of his salary in U.S. dollars.

Although plaintiff's TCN status remained constant between 1972 and 1977, State's pay calculation method was changed twice during that interval. Between September 1972 and February 1974, State calculated plaintiff's pay in dollars, but he received 50 percent of his salary in U.S. dollars and 50 percent in Zaires (the currency of Zaire). In February 1974 the calculation method changed so that plaintiff's salary remained set in dollars, but he received 75 percent in U.S. dollars and 25 percent in Zaires. Plaintiff's compensation underwent another metamorphosis in 1977. The basis for salary calculations became Belgian Francs, and plaintiff received 75 percent of his pay in Belgian Francs and 25 percent in Zaires. State informed plaintiff of his change in status to that of an Expatriate one month after this new schedule became applicable to him. In 1981 the basis for this calculation returned to U.S. dollars, and plaintiff received 75 percent of his salary in U.S. dollars and 25 percent in Zaires.

This compensation plan remained in effect until State installed a new schedule on December 8, 1985. Plaintiff received notice of this new compensation plan on June 19, 1986. This new plan entailed a salary freeze for Expatriates that became effective on December 8, 1985. In addition, Expatriates would receive 50 percent of their pay in U.S. dollars and 50 percent in Zaires. This provision became effective on December 20, 1986. The plan also effected a freeze in the exchange rate, so that the

applicable rate would be that of December 8, 1985 (56.4 Zaires = 1 U.S. Dollar). Until plaintiff's adjusted base rate exceeded the sum of a State schedule, benefits such as housing, transportation, and family allowances previously accorded plaintiff were suspended contemporaneously.

State's regulations, as found in the FAM, prohibit revisions of local compensation plans if such revisions produce a decrease in an employee's salary. 3 FAM § 932.6(a) provides, in pertinent part:

When a joint local compensation plan is revised, adjustments in individual salaries and/or classes or positions are worked out in general conformance with the following principles:

(1) No employee should suffer a decrease in salary due to the installation of a new or revised local compensation plan, except in the event of a general downward revision of the joint schedule as a consequence of a substantial decrease in prevailing salary rates.

Section 932.5(c) allows for the retroactive implementation of a compensation plan only "as the result of the issuance of a host government decree retroactively affecting the salaries of employees of most or all public and private local enterprises." At the time State's 1985 compensation plan took effect, Zaire had not promulgated such a decree.

The 1985 compensation plan effectuated a severe decline in plaintiff's purchasing power. Specifically, plaintiff alleges that he suffered a 37–percent decrease in pay. Defendant disagrees that plaintiff's salary decreased at all. This alleged decrease resulted because of two significant circumstances. First, a two-tiered payment system exists in Zaire wherein citizens of Zaire may pay exclusively in Zaires, but non-citizens must pay for most large expenses in hard currency. Second, the exchange rate of U.S. dollars to Zaires had diminished against the dollar almost threefold from December 1985 to November 1988 when State implemented the frozen exchange rate. This discrepancy in exchange rates lays a heavy burden on plaintiff in that he

must pay three times more than the frozen exchange rate for most large expenses.

State has issued a Handbook to aid in developing procedures for FSN employee grievances. *Inter–Agency Handbook on Foreign Service National Personnel Administration* (FSNPAH) § 12, "FSN Employee/Management Relations" (undated) [hereinafter "Handbook"]. Such grievances are to be settled at post with the Chief of Mission as the final arbiter and are not subject to further appeal. On February 9, 1987, plaintiff, along with 19 other Expatriates in Kinshasa, Zaire, filed with "defendant" a grievance requesting a reversal of the decision to implement the FSN compensation plan because of the economic hardships the plan forced on Expatriates. Plaintiff avers that "defendant" responded to the grievance denying the requested relief. Amended Complaint, filed Dec. 5, 1988, ¶¶ 28–29; *see infra* note 2. Plaintiff sued in the Claims Court for $23,200.00 in back pay denied him since the implementation of the 1986 compensation plan and an order requiring State to pay him under the previous plan.

## DISCUSSION

The issue for decision is whether this court has jurisdiction to hear plaintiff's claim based on defendant's alleged breach of regulations. Since the existence of jurisdiction is dependent upon the extent to which the United States has waived its sovereign immunity, such a waiver must be express. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1387 (Fed. Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). According to defendant, sovereign immunity has not been waived in respect of plaintiff's claim.

The FSA grants U.S. citizen members of the Foreign Service the right to grieve the denial of a financial benefit to which the member claims entitlement under applicable law or regulations. 22 U.S.C. § 4131(a)(1)(G). Judicial review in federal district court is afforded after an administrative decision issues on such a grievance. 22 U.S.C. § 4140. These statutory rights were not extended to FSN employees of the Foreign Service. State established a framework for developing within the individual Missions grievance procedures for FSN's, although consideration of "salary" "must be excluded." [2] Handbook § 12.5c(4).

Defendant relies on *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 *reh'g denied,* 485 U.S. 972, 108 S.Ct. 1250, 99 L.Ed.2d 448 (1988), which it claims to be analogous to the present situation. *Fausto* held that the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in various sections of 5 U.S.C. (1982 & Supp. IV 1986)) (the "CSRA"), provides the exclusive means for judicial review of federal personnel actions. The Court deemed that nonpreference eligible service employees in the excepted service, such as plaintiff Fausto, were precluded from seeking administrative or judicial review of suspensions for misconduct, since the CSRA did not stipulate that these employees had the right to such review. Further, the Supreme Court held that "under the comprehensive and integrated review scheme of the CSRA," 484 U.S. at 454, 108 S.Ct. at 676, the Claims Court had no authority to review an agency's personnel determination under the Back Pay Act. 5 U.S.C. § 5596 (1988). Defendant argues that a nexus exists between the present case and *Fausto* in that Congress intended the FSA to be a "companion measure" to the CSRA, the former having been designed to "strengthen and improve the Foreign Service of the United States by reorganizing and consolidating the components of the service ... under one law governing Foreign Service operations and personnel administrations." S.Rep. No. 913, 96th Cong., 1st Sess. 1, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4419. According to defendant,

---

2. The record does not permit a ruling that FSN's may grieve the installation of a compensation plan, although plaintiff averred in his complaint that he joined in filing a grievance that subsequently was denied.

the CSRA's establishment of an administrative board to consider adverse personnel actions with respect to civil service employees, followed by judicial review in the Federal Circuit, is akin to the structure established by the FSA. Therefore, the FSA's exclusion from access to the courts of a category of employee—FSN's—is akin to the CSRA's similar exclusion of nonpreference eligible employees in the excepted service and should be upheld as a exercise of the congressional power to limit a waiver of sovereign immunity.

Plaintiff takes exception to the application of *Fausto*. Plaintiff bases his distinction of *Fausto* on several salient factors. First, and most compelling, is plaintiff's argument that the Supreme Court in *Fausto* upheld the exclusion of nonpreference eligible employees of the excepted service from administrative or judicial review of suspensions for misconduct because Congress dealt "explicitly" with these employees, "granting them limited, and in some cases conditional, rights." *Fausto*, 484 U.S. at 445, 108 S.Ct. at 672. Plaintiff fairly characterizes Justice Scalia's analysis that Congress intentionally declined to give these employees statutory entitlement to review of suspensions for misconduct as bottomed on the CSRA's grant of some protection to nonpreference members of the excepted service. *See id.* at 446, 447, 448, 108 S.Ct. at 672, 673, 674. Therefore, plaintiff asserts that the Supreme Court would not have countenanced the exclusion of these employees from the ambit of the CSRA.

Second, according to plaintiff, his claim, unlike that in *Fausto*, is not a personnel action but, rather, is based upon State's reducing his pay in violation of its own regulations. Plaintiff points out that the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), grants jurisdiction over "any claim against the United States founded either upon ... any Act of congress or any regulation of an executive department," thus constituting an express waiver of sovereign immunity. According to plaintiff, State, an executive department, violated 3 FAM §§ 932.-6(a) and 932.5(c), when it retroactively installed the new local compensation plan, thereby decreasing his salary. Third, plaintiff has not relied upon the Back Pay Act for his substantive rights, but has cited violations of specific regulations. Fourth, plaintiff claims that 28 U.S.C. § 2502 (1982), mandates that he be granted a forum by this court. Section 2502 provides that aliens may sue the United States if their own governments would entertain the suits. Plaintiff contends that there are no indicia that Congress intended for the FSA to bar access based on section 2502 by the Government's own employees. Without access to this court, plaintiff complains that he has no alternative forum.

Although plaintiff's reading of *Fausto* is correct, *Fausto* does not hold that absent any attention to the rights of nonpreference eligibles, the Supreme Court would have ruled that they could pursue the type of adverse personnel action at issue before an agency and in this court. Rather, the Court legitimized its holding as a matter of statutory interpretation by pointing out that the exclusion of these employees from administrative and judicial relief in respect of certain personnel actions was not an oversight, since the CSRA gives attention "throughout to the rights of nonpreference excepted service employees." 484 U.S. at 448, 108 S.Ct. at 673. Unlike the situation in the case at bar, the affected employees had available before the CSRA a preexisting judicial remedy—specifically, suit under the Back Pay Act in this court for the pay withheld during the period of the contested suspension. The *Fausto* Court was constrained to deal with the issue whether the CSRA withdrew or curtailed this judicial remedy. In this case the FSA made no provision for any administrative or judicial process by FSN's. As the Handbook explains in section 12.5b(1):

Any formalization, however, should not necessarily follow closely the American foreign affairs agencies' procedures (3 FAM 660) which result from a statutory requirement for U.S. citizen employees, are complex, involve U.S. standards of due process, and provide for great freedom of action and access to official documents. In any event, FSN employee

grievances should be settled at post with the Chief of Mission as the final arbiter.

With respect to plaintiff's remaining three arguments, the previously assigned judge directed the parties to two recent decisions of the Federal Circuit. *Hamlet v. United States*, 873 F.2d 1414 (Fed.Cir. 1989), stands for the proposition that if the employee in question is not a member of the civil service, the employee is unaffected by the policies of the CSRA. *Hamlet* arose from the Back Pay Act claim of a program assistant employed by a local office of the Agricultural Stabilization and Conservation Service's ("ASCS") of the United States Department of Agriculture ("USDA"). She was employed not by the USDA, but by a county committee under the auspices of the ASCS. The parties agreed that she was not an employee of the United States and that her employment was governed by an ASCS Personnel Manual. Plaintiff shares a similarity with plaintiff in *Hamlet*, he argues, in that his claim of entitlement is predicated upon regulations, rather than determined by the Back Pay Act. The Federal Circuit remanded the case for further consideration noting that the Claims Court's jurisdiction depended upon a finding that the ASCS personnel manual provisions could be properly construed as money mandating. 873 F.2d at 1417.

Defendant notes that plaintiff in *Hamlet* was not an employee of the United States, nor was her employee status controlled by statutory provisions. Moreover, defendant finds an express bar to plaintiff's claim resulting from his status as an employee by "appointment." The Court in *Hamlet* specifically addressed this issue: "[I]f Hamlet's employment was by 'appointment,' a breach of contract action against the government would be precluded." 873 F.2d at 1417 n. 5 (citations omitted). At argument plaintiff's counsel stated that he withdrew his contract claim.

*Carter v. Gibbs*, 883 F.2d 1563 (Fed.Cir. 1989), held that the CSRA did not invariably expunge a right to sue granted by another statute, specifically a claim for pay under the Fair Labor Standards Act. The case also holds that Congress did not in-

tend to repeal by implication judicial remedies provided by other statutes when it blocked access to administrative procedures for dispute resolution. In reliance on this line of reasoning, plaintiff argues that the holding in *Fausto* cannot preclude the right to sue which is explicitly granted by section 2502.

28 U.S.C. § 2502, which provides, in pertinent part:

(a) Citizens or subjects of any foreign government which accords to citizens of the United States the right to prosecute claims against their government in its courts may sue the United States in the United States Claims Court if the subject matter of the suit is otherwise within such court's jurisdiction.

According to defendant, section 2502 expressly requires a claimant to establish an additional and independent constitutional, statutory, or regulatory basis for jurisdiction above and beyond section 2502. The court agrees. The specific language granting jurisdiction to the Claims Court under section 2502 requires that the subject matter of the suit be otherwise within its jurisdiction.

The language of the Tucker Act has been honed through the contributions of case law. Of particular importance is *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967), holding that a claim brought in the predecessor Court of Claims must be for money. Specifically, the court disclaimed jurisdiction over a case in which the basis of the claim cannot be held to command, on itself, payment of money to a claimant. Plaintiff cites the violations of agency regulations as his basis of substantive rights upon which to predicate an action. However, these regulations do not command the payment of money that would enure to the benefit of a claimant. Even if regulations forbidding a decrease in salary due to the installation of a new local compensation plan were to mandate the payment of a salary absent such a decree, as plaintiff forcefully argues, *Fausto* counsels that the FSA can exclude plaintiff from access to both administrative relief and judicial review of an administrative

decision. Although these options are available to U.S. citizens who are employee members of the Foreign Service, non-U.S. citizen members are precluded. The FSA permissibly represents a statutory scheme that precludes FSN's from the administrative and judicial remedies that it established.

### CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied. The Clerk of the Court shall dismiss the amended complaint for lack of subject matter jurisdiction.[3]

IT IS SO ORDERED.

---

**3.** A recent unpublished opinion of the Federal Circuit suggests that the dismissal should be "without prejudice." It is understood that a dismissal for lack of subject matter jurisdiction operates without prejudice.