**Hamid ASHGAR**

v.

**The UNITED STATES.**

**No. 90–440C.**

United States Claims Court.

June 20, 1991.

Marni E. Byrum, Arlington, Va., attorney of record, for plaintiff.

David Epstein, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Carol Light, U.S. Dept. of State, of counsel.

## OPINION

YOCK, Judge.

This civilian pay case is before the Court on the defendant's motion to dismiss for lack of jurisdiction or, in the alternative, for summary judgment. For the reasons stated below, the defendant's motion to dismiss is granted.

### Factual Background

Plaintiff Hamid Ashgar is a citizen of Pakistan and was employed for some twenty-three years as a Foreign Service National (FSN) by the American Embassy at Islamabad, Pakistan, in the position of Consulate Assistant. On December 6, 1988, after a security investigation conducted by Embassy personnel, the Embassy transmitted to the plaintiff a notice of intent to separate him for cause from his position. The notice charged that Mr. Ashgar: (1) had accepted bribes to facilitate nonimmigrant visas; (2) had solicited payments in exchange for assistance in facilitating such visas; and (3) had filed false immigration visa field investigation reports with the intent of aiding and abetting false visa applications for personal profit. The notice informed Mr. Ashgar that he had a right within five days to appeal the proposed action and be entitled to a hearing before a Foreign Service National Appeal Board.

State Department procedures require that all FSN employee actions are to be settled at the Embassy and "are *not subject* to due process or other Washington procedures * * * for American citizens." *Interagency Handbook on Foreign Service National Personnel Administration* (FSNPAH) § 12.4a (1985) (emphasis in original). In accordance with this mandate, the Embassy in Pakistan provides FSN employees with a right to appeal any proposed employment action against them. *Foreign Service National Employees Handbook for the United States Mission in Pakistan* (Handbook) (1984). Pursuant to his employment rights, as outlined in the Handbook, plaintiff appealed his termination for cause and was given a hearing before a Foreign Service National Appeal Board in Pakistan on December 21, 1988. The Board decided that:

> because of the high stakes involved in a case involving termination for cause after more than 20 years service, a vigorous standard of proof is required in order to support a guilty verdict. Because much of the testimony in this case was second-hand and, in some instances, the witnesses were less than totally reliable, the tribunal does not feel that it can deliver a guilty verdict in this case.
>
> Nevertheless, all members of this panel agree that the circumstantial evidence that Mr. Hamid Asghar [sic] has misused his position as a Consular Assistant is strong and persuasive, despite the fact that we cannot conclude that he is guilty beyond a reasonable doubt. The number and consistency of the allegations of bribe-taking and the critical conclusions of some of Mr. Hamid's colleagues create the strong doubt that he has discharged his duties faithfully and that he would do so in the future.
>
> In consequence, while it is beyond the competence of this tribunal to recommend administrative action, we enter for the record the [sic] that we believe a termination for loss of confidence would be reasonable and justified.

Thus, the Board recommended that Mr. Ashgar be terminated for "loss of confidence."

By letter dated February 23, 1989, the Personnel Officer at the Embassy in Islamabad informed Mr. Ashgar of the final decision to separate him for "loss of confidence." The letter also stated that severance pay was authorized. On March 30, 1989, Mr. Ashgar executed an application for immediate retirement under the discontinued-service retirement provisions of the Civil Service Retirement System. In requesting the necessary forms from the Em-

bassy, Mr. Ashgar stated that since he had been terminated without cause, he believed he was entitled to an immediate discontinued-service retirement based on his age (50) and years of service (23 years). By letter dated April 26, 1989, the American Embassy in Pakistan transmitted Mr. Ashgar's application for immediate retirement under the Civil Service Retirement System to the Office of Personnel Management. The Embassy's personnel officer stated in that letter that a discharge on grounds of "lack of confidence" was not deemed to be a termination for cause.

By letter dated June 26, 1989, the Deputy Chief of Mission of the U.S. Embassy in Pakistan informed Mr. Ashgar that the earlier action separating him on grounds of "loss of confidence" was in error, and that the termination "is for cause as documented in the show cause letter of December 6, 1988 * * *." The letter also indicated that severance pay would not be authorized. The letter further advised that the plaintiff's eligibility for discontinued-service retirement would be decided by the Office of Personnel Management (OPM) and that his application would be forwarded to OPM by the Department of State in Washington, D.C.

On December 4, 1989, Mr. Ashgar, by letter, requested that the Director of Foreign Service for the Department of State investigate the personnel actions taken by the Department as the actions were allegedly contrary to the handbooks, manuals, and procedures of the Department. Ashgar requested that the Department reinstate the previous grounds for his removal (i.e., "loss of confidence") and provide him with the pay to which he was entitled. He further requested that the Department submit his discontinued-service retirement application to OPM.

On November 17, 1989, OPM received Mr. Ashgar's application for retirement and the supporting documentation. By initial decision of January 9, 1990, OPM denied Ashgar's application for a "discontinued service" annuity since, based on the documents submitted to OPM, his discharge by the Department of State on charges constituting delinquency and misconduct was for cause. The OPM letter also informed Ashgar of his right to request reconsideration and enclosed a standard notice of the reconsideration rights. On February 7, 1990, Ashgar requested reconsideration of the OPM's initial denial decision. His request was received and acknowledged by OPM on February 12, 1990. Although the plaintiff's reconsideration request was thereafter lost, OPM has now apparently located the request and is proceeding to adjudicate the plaintiff's request for reconsideration "as expeditiously as possible."[1]

On February 9, 1990, Mr. Ashgar received a written reply from William J. Hudson, Director, Office of Foreign Service National Personnel, to his request for an investigation into the Department of State's improper personnel actions. Mr. Hudson indicated that the Department of State had requested and received an opinion from a high Pakistani Justice Ministry official who found that, under Pakistani labor law, the terms "loss of confidence" and "for cause" were synonymous. The letter from Mr. Hudson concluded that the findings of the FSN Appeal Board were sufficient to support a separation for cause under Pakistani labor law and pertinent department procedures.

Shortly thereafter, the plaintiff filed his complaint in this Court seeking: (1) an order mandating the defendant to follow its own regulations and comply with the FSN Appeal Board decision; (2) reinstatement or placement in the appropriate retirement status; (3) correction of applicable records; and (4) an award of severance pay, benefits, costs and attorney's fees. Plaintiff asserts jurisdiction based on the Tucker Act, 28 U.S.C. § 1491 (1988); the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (1988); the Severance Pay Act, 5 U.S.C. § 5595 (1988); and the regulations of the Department of State contained in the Foreign Affairs Manual (FAM) and the Pakistan FSN Employees Handbook.

---

1. See Defendant's Reply brief, dated March 15, 1991, at 10.

## Discussion

As earlier indicated, the defendant has filed a motion to dismiss for lack of jurisdiction or, in the alternative, for summary judgment. The defendant argues that the plaintiff has cited to no applicable law or regulation that mandates a money judgment against the Government and thus had not properly involved the jurisdiction of this Court. Unfortunately for the plaintiff, the Government is correct, and the plaintiff's complaint will be dismissed.

To begin with, what the plaintiff is seeking in this case is corrective action ordered by this Court in the form of a declaratory judgment to change the characterization of his termination from one based on cause to one based on no cause (or no misconduct), so that he may be eligible for an immediate discontinued-service retirement annuity. The plaintiff alleges that the Department of State violated the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (1988) (APA), by failing to follow its own internal regulations and procedures in terminating his employment for cause. He further contends that the actions of defendant resulted in a denial of due process and were arbitrary and capricious. As an essential part of his relief, he seeks a declaratory order mandating the defendant to follow its own regulations and comply with the Foreign Service National Appeal Board decision. He believes that the Board's decision found his termination appropriate, but not for cause (*i.e.,* no misconduct), and, thus, he would not be precluded from receiving a discontinued-service retirement. He further believes that the Board's decision was final and that the Department of State had no right to review and change the characterization of that termination to one for cause (*i.e.,* misconduct). He therefore wants this Court, using the APA standards, to review the agency decision and procedures, find them arbitrary and capricious and in violation of due process, and order the Department of State to reinstate the plaintiff's termination without cause.

 Unfortunately, however, this Court does not have general review authority under the APA to accomplish this.

Such general review authority has been assigned to the district courts of the United States. This Court is one of special jurisdiction which may not entertain claims which fall outside its specific grants of review authority. It has been frequently stated that waivers of sovereign immunity must be narrowly construed. *See United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941); *Kabua v. United States,* 212 Ct.Cl. 160, 167, 546 F.2d 381, 385 (1976), *cert. denied,* 434 U.S. 821, 98 S.Ct. 63, 54 L.Ed.2d 77 (1977). The jurisdictional grant relevant here is the Tucker Act, pursuant to which the Court is given the following jurisdiction:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (1988). This statute is only jurisdictional, however, and does not create any substantive right enforceable against the United States for money damages. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Alexander v. United States,* 5 Cl.Ct. 57, 60 (1984), *aff'd mem.,* 758 F.2d 667 (Fed.Cir.1984). The Act merely confers jurisdiction in the event that a substantive right to sue the Government already exists.

 In order, therefore, to invoke the jurisdiction of the Claims Court on the basis of an alleged statutory or regulatory violation, the plaintiff must rely on a statutory or regulatory provision mandating that compensation be paid by the United States for the damage sustained. *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967). The plaintiff's attempt to obtain review under the APA is deficient in that this statutory provision does not mandate the payment of money damages by the Government to plaintiff.

As the Supreme Court held in *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977), the APA is not an independent source of jurisdiction for any court. Since there is no generalized authority for this Court to review agency actions, the review standard created by the APA is simply not applicable in the Claims Court. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1375 (Fed.Cir. 1983); *Costner v. United States*, 229 Ct.Cl. 87, 89 n. 5, 665 F.2d 1016, 1017 n. 5 (1981). *Heagy v. United States*, 12 Cl.Ct. 694 (1987), *aff'd mem.*, 848 F.2d 1244 (Fed.Cir. 1988). *See also Paskert v. United States*, 20 Cl.Ct. 65, 77 (1990).

■ Furthermore, this Court does not have general declaratory judgment authority. In *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), respondent sought review of the Secretary of the Army's action in rejecting his disability retirement on the grounds that the action was arbitrary, capricious and unlawful. However, the Supreme Court ruled that the jurisdiction of the Court of Claims (our predecessor court) is limited to money claims against the United States and that the court lacked the authority to issue declaratory judgments. Thus, it is clear that this Court does not have the jurisdictional authority to do what the plaintiff is seeking from this Court. This Court does not have the general authority to issue declaratory judgments to agencies to clean up their procedures, which is, of course, the essential thrust of the plaintiff's claim here.

■ A second potential source of jurisdiction that the plaintiff cites to is the Severance Pay Act, 5 U.S.C. § 5595 (1988). Plaintiff requests an award of severance pay and contends that the Severance Pay Act establishes jurisdiction since *Hedman v. United States*, 15 Cl.Ct. 304 (1988), stands for the proposition that this Court has jurisdiction to hear claims under the

Act. Accordingly, plaintiff relies on section (b) of section 5595 which states:

(b) Under regulations prescribed by the President or such officer or agency as he may designate, an employee who—

(1) has been employed currently for a continuous period of at least 12 months; and

(2) is involuntarily separated from the service, not by removal for cause on charges of misconduct, delinquency, or inefficiency;

is entitled to be paid severance pay in regular pay periods by the agency from which separated.

Plaintiff maintains that since his termination was erroneously characterized as one "for cause," he rightfully qualifies under section (b) to be paid severance pay.

Defendant responds that, while the Claims Court may have jurisdiction to decide claims under the Severance Pay Act, the Act is not applicable to the case at bar because it specifically excludes plaintiff from its definition of employee. In order to establish jurisdiction under the Severance Pay Act, plaintiff must meet the independent requirements of the statute. Section (a)(2)(A) defines employee as "an individual employed in or under an agency;" however, the section goes on to state that the definition does not include "an alien employee who occupies a position outside the several States * * *." 5 U.S.C. § 5595(a)(2)(B)(iii). This unambiguous provision clearly applies to the plaintiff here, who is a Pakistani citizen employed in Pakistan. Thus, jurisdiction in this Court cannot be established under the Severance Pay Act.[2]

The plaintiff also asserts jurisdiction based on alleged violations of the Department of State regulations, specifically those contained in the Foreign Affairs Manual (FAM) and the Pakistan FSN Em-

**2.** It also should be noted that the plaintiff is currently seeking a discontinued-service retirement annuity from OPM. The Severance Pay Act also precludes an employee from receiving both severance pay and a retirement annuity. *See* 5 U.S.C. § 5595(a)(2)(B)(iv) (1988). *See Campell v. United States*, 7 Cl.Ct. 195, 198

(1985); *Akins v. United States*, 194 Ct.Cl. 477, 483–84, 439 F.2d 175, 177–78 (1971). Thus, to the extent that the plaintiff could establish jurisdiction in this Court pursuant to the Severance Pay Act, his severance claim at this point would be premature.

ployees Handbook (Handbook). Specifically, plaintiff alleges violations of 3 FAM §§ 974.1 and 974.2 (1982) in conjunction with violations of the Embassy's Handbook. These regulations govern procedures for disciplinary actions of FSN employees. Basically, the FAM provides that actions for termination for cause should be administered at the Embassy according to procedures developed by the Embassy. The Embassy developed a Handbook which stated that decisions of the FSN Board would not be subject to further appeal. Plaintiff argues that these regulations mandate that the FSN Board's finding of insufficient evidence to terminate for cause is binding on the State Department just as it is binding on him; therefore, the recharacterization of his termination was against regulations and to his detriment so that he is entitled to money damages.

■ In response, defendant states that these FAM and Handbook regulations do not mandate any money damages for any supposed violations and cites the Court to the recent decision of *Dos Santos v. United States,* 19 Cl.Ct. 681 (1990), in support of this proposition. In that decision, Dos Santos, a FSN employee in Zaire, brought a civilian pay case against the State Department, relying in part on regulations set forth in 3 FAM §§ 930–937 (1982). The Court found that "these regulations do not command the payment of money that would enure to the benefit of a claimant." *Id.* at 686. Similarly, the regulations relied upon by plaintiff here do not command a payment of money. The regulations merely outline the appropriate action procedures governing FSN employees. Furthermore, the holding in *Dos Santos,* stating that the Foreign Service Act of 1980, Pub.L. No. 96–465, 94 Stat. 2071, 22 U.S.C. §§ 3901–4173 (1988) (FSA), "permissibly * * * precludes FSN's from the administrative and judicial remedies that [the FSA] established [to handle employee actions]," indicates that this Court has no jurisdiction to hear plaintiff's case at bar.[3] *Id.* at 687.

■ Finally, because the plaintiff's complaint and response to the defendant's motion is somewhat oblique, the Court deems it appropriate to make several further comments. The first point to be made is that this Court is out of the civilian pay adverse action judicial review business. The Civil Service Reform Act of 1978, Pub.L. No. 95–454, Oct. 13, 1978, 92 Stat. 1111 (CSRA), makes that very clear as do the cases. *See United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); *Lindahl v. OPM,* 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). Although the plaintiff is a Foreign Service National and is therefore covered by the Foreign Service Act of 1980, Congress made it very clear in the legislative history that the FSA was a companion statute to the CSRA and thus should be interpreted in the same way. *See* S.Rep. No. 913, 96th Cong., 1st Sess. 1, *reprinted in* 1980 U.S. Code Cong. & Admin.News 4419. It is, therefore, clear that this Court lacks jurisdiction to review adverse personnel actions under the FSA, just as it is crystal clear that we lack jurisdiction to review those claims under the CSRA. *See generally Dos Santos v. United States,* 19 Cl.Ct. 681 (1990).

■ Secondly, the CSRA has also made it very clear that claims for retirement annuities and benefits must be pursued as set forth in the CSRA. The sole avenue of relief available to plaintiff, concerning his request for discontinued-service retirement benefits, is through the statutory and regulatory scheme of administrative remedies established by 5 U.S.C. §§ 7703 and 8347 (1988). Under 5 U.S.C. § 8347(b), OPM is authorized to adjudicate all claims under the discontinued-service retirement provision of CSRS. The second-level "reconsideration" decision is the final OPM decision in the process. *See* 5 C.F.R. § 831.109. Under 5 U.S.C. § 8347(d)(1), a final adverse decision of OPM may be appealed to the MSPB. This two-tier adjudication procedure before the OPM and MSPB is mandatory and must be exhausted

---

**3.** The *Dos Santos* Court concluded that exclusion of FSNs from the FSA provisions for ad- ministrative and judicial process was not an oversight. 19 Cl.Ct. at 685.

before any rights to judicial review attach. *See Rogers v. United States*, 15 Cl.Ct. 692, 698 (1988). A final decision of the MSPB, if also adverse to plaintiff, may be appealed to the United States Court of Appeals for the Federal Circuit pursuant to 5 U.S.C. § 7703(b)(1). This statutory scheme of administrative review by the MSPB and judicial review by the Federal Circuit is the exclusive avenue for judicial review of claims for CSRS benefits denied by OPM. *See Lindahl v. OPM*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985).

█ Third and finally, it should be pointed out that it is not up to the Court to look at every conceivable statute or regulation to determine whether or not the plaintiff has made out a claim within this Court's jurisdiction. It is the plaintiff's burden to establish jurisdiction in this Court by citing to a statute or regulation that mandates a money judgment for an appropriate violation.

## CONCLUSION

For all of the reasons stated above, this Court lacks jurisdiction over the plaintiff's claims stated herein. Accordingly, the defendant's motion to dismiss for lack of jurisdiction is granted, and the plaintiff's complaint is to be dismissed.

Each party is to bear its own costs.